BROCK *v.* BATES.

5-1127                                               297 S. W. 2d 938

Opinion delivered January 7, 1957.

[Rehearing denied February 18, 1957]

*L. A. Williams* and *Richard Mobley,* for appellant.

*Wiley W. Bean,* for appellee.

Ed. F. McFaddin, Associate Justice. In this suit — involving a roadway — the decree must be reversed because of a procedural point.

At the close of the plaintiffs' case, the Chancery Court sustained the defendant's demurrer to the plaintiffs' evidence and dismissed the complaint. Under the holding in *Werbe* v. *Holt,* 217 Ark. 198, 229 S. W. 2d 225, and other cases,[1] the rule is that in passing upon such a demurrer the Court must give the evidence its strongest probative force in favor of the plaintiff and rule against the plaintiff only if such evidence, when so considered, fails to make out a *prima facie* case. In the case at bar, we believe that the plaintiffs' evidence, when so weighed, made a fact question requiring the weighing of evidence and the exercise of fact finding powers; and so we conclude that the decree should be reversed and the cause remanded, with directions to overrule the defendant's demurrer.

Appellants, Jack Brock, *et al.,* own lands, in Johnson County, that are located about one mile west of old Highway No. 64, which runs in a general north and south direction. Appellee Bates owns the land west of and along the highway. West of the Bates land, Buddy Brock owns land; and then further west are the lands of appellants. The road in question (called the Brock road) leaves old Highway No. 64 on appellee's lands and goes westerly through the lands of appellee and Buddy Brock to the house on appellants' lands about a mile west of old Highway No. 64. In 1955 appellee, Bates, erected

---

[1] Some of the cases following and applying the rule of *Werbe* v. *Holt* are: *Poynter* v. *Williams*, 218 Ark. 570, 237 S. W. 2d 903; *Thompson* v. *Murdock Acceptance Corp.*, 223 Ark. 483, 267 S. W. 2d 11; *Karoley* v. *Reid*, 223 Ark. 737, 269 S. W. 2d 322; and *McCord* v. *Robinson,* 225 Ark. 177, 280 S. W. 2d 222.

and locked an iron gate across the Brock road where it leaves Highway No. 64. Appellants brought this suit in chancery to prevent the locking of the gate and the closing of the Brock road to the appellants.

Appellants offered evidence designed to show: that the Brock road had been in existence for over sixty years; that the appellants and their predecessors in title had, during all that time, traveled the Brock road across the Buddy Brock lands and the appellee's lands to old Highway No. 64; that originally the Brock road continued on westerly through appellants' land to a boat landing on the Arkansas River; that the portion of the road from the appellants' lands to the river had been discontinued; that since about 1906 there had been a "seasonal gate"[2] on the boundary line between the Buddy Brock lands and

---

[2] As regards the Brock road and the "seasonal gate" erected about 1906, Mr. Cecil Barger, who, up until about 1950, lived on the lands that the appellee now owns, testified:

"Q. Was it ever stopped up to keep the public from traveling it?
A. Not that I know of.
Q. Did you stop it up?
A. No.
Q. And you lived there until 1950?
A. That's right.
Q. Sometime back in 1936, or somewhere along in there, did you sign a petition to have that declared a County road?
A. I signed it—let's see—yes, I signed that petition.
Q. Did the County work that road?
A. They did.
Q. Until you left there, is that right?
A. Yes, sir . . .
Q. . . . That was on west of the house. It was a wire gap, wasn't it, or was it a gate?
A. Which one?
Q. Back over on the west there where you put it up.
A. When I put it up, I put up a wire gate.
Q. Was it what would be called a gap?
A. That's right.
Q. You didn't put a lock on it, did you?
A. No.
Q. You permitted everybody to use it?
A. That's right.
Q. Had no intention of cutting them off?
A. No, nothing only that one time.
Q. But you didn't do it then?
A. No, and I wouldn't today."

the appellee's lands, and, at another place on the Brock road, there had been a "wire-gap-gate";[3] that both of these gates had only been used about three months a year, and only to prevent cattle in the fields from going from one farm to another. It was also shown that the Brock road had never been dedicated as a State or County highway, but had existed by prescription for over sixty years.

In sustaining the defendant's demurrer, the learned Chancellor was of the opinion that the "seasonal gate" between the Bates land and the Buddy Brock land had existed since 1906 and had defeated the appellants' right to use the Brock road over the appellee's lands. But the appellants argued that even if the Brock road was not a public road under § 37-109 Ark. Stats., still the appellants and their predecessors in title had used the Brock road and acquired prescriptive rights long before 1906 and that the prescriptive rights once acquired could not be lost except by a *continuous* gate maintained for seven years; that neither the "seasonal gate" nor the "wire-gap-gate" was so maintained; and that thus the prescriptive rights over the Brock road had not been lost by reason of either the "seasonal gate" or the "wire-gap-gate".

A decision by the Chancery Court required a weighing of the appellants' evidence to determine at least two questions: (a) had appellants' predecessors in title acquired a prescriptive right prior to 1906? and (b) had the "seasonal gate" or "wire-gap-gate" been maintained in such a manner as to cause appellants' prescriptive rights to be lost? In short, when we give full probative force to appellants' evidence — as we do under the rule of *Werbe* v. *Holt* — the said evidence was suffi-

---

[3] We cannot find "wire-gap-gate" in the dictionary; but to farmers and others engaged in agricultural pursuits the meaning is clear: when there is a wire fence, the wires on one of the fence posts may be severed from the post and attached to a stake so that the stake can either be tied to the post to make a fence, or the stake and attached wires pulled away so as to leave an opening or gate between the two fence posts. The evidence showed that the "wire-gap-gate" was far less an obstruction to the road than the "seasonal gate", and existed for a much shorter period of time.

cient to require the exercise of fact finding powers and the determination of whether the said evidence should be believed or disbelieved. In this situation the demurrer to the evidence should have been overruled so the evidence could be weighed and the facts decided on the merits. Therefore, the decree is reversed and the cause is remanded, with directions to overrule the demurrer; and for further proceedings not inconsistent with this opinion.

CARLETON HARRIS, C. J., not participating.