Sarah ELLISON *v.* THERMA TRU;
Liberty Mutual Insurance Company;
and Second Injury Fund

CA 00-126                                    30 S.W.3d 769

Court of Appeals of Arkansas
Divisions I, II, and III
Opinion delivered November 15, 2000

*Walker, Shock, Harp & Hill, P.L.L.C.,* by: *Eddie H. Walker, Jr.,* for appellant.

*Ledbetter, Cogbill, Arnold & Harrison, L.L.P.,* by: *E. Diane Graham,* for appellee Therma Tru.

SAM BIRD, Judge. In this second appeal to this court, the appellant, Sarah Ellison, contends that the Commission erred by determining that she had not proven by a preponderance of the evidence that she is permanently and totally disabled and could be categorized as falling under the odd-lot doctrine. Because substantial evidence exists to support the Commission's decision, we affirm.

At the hearing before the administrative law judge, Ellison testified that she had experienced two non-work-related injuries to her back, in 1987 and 1989. She began working for Therma Tru in 1979, and her job required her to "pull loads of door stiles across the floor onto my machine." She suffered a compensable injury in 1991 while she was employed with Therma Tru and was pulling a

load of door stiles when she felt a "pop" in her back. She suffered recurrences of her injury in 1992 and 1993. The injury was accepted as compensable by Therma Tru, which paid indemnity and medical benefits. Ellison then claimed that she was permanently and totally disabled.

Ellison testified that she was terminated from Therma Tru on June 30, 1993, after her second recurrence "because her pain became so severe" that she could not cope with it. She testified that she has not worked since, and that she has not applied for any other jobs, but that she has asked to return to Therma Tru but was refused. After she was terminated, she presented to Dr. Stephen Heim, an orthopaedic surgeon. She stated that she is in constant pain and cannot sit or stand for a long period of time. She admitted that she did not see a doctor for her back condition in 1994, 1995, or 1996, and that she had not attended or scheduled any follow-up appointments with Dr. Heim since February 1997 because, she stated, Dr. Heim seemed to think there was nothing he could do to help her.

She also states that she had experienced respiratory and breathing problems in the past, as early as 1983, having been diagnosed with bronchitis and other respiratory problems. An inhaler was prescribed for her in 1988 by Dr. Sasser. She has smoked for approximately thirty years and has been told by doctors several times that she should quit. She said that she missed work in 1991 for her respiratory breathing problems, and that her problems had worsened. She stated, "I don't have much breath. Just any little thing and I'm out of breath. ... Moving around or strenuous things cause me to run short of breath. Just trying to walk or anything." She stated that she is able to go grocery shopping, cook, and do laundry, but that she has to stop, sit down, and take a breath.

She stated that the effects of her back injuries, coupled with her respiratory problems, do not allow her to work. She testified, "If I had a job that I could just sit and use my hands I could do it if it were not for my respiratory problem. But if I'm going to be moving around or anything strenuous I could not do it with my respiratory [problems], neither with my back. I think I can do sedentary work."

She contends that she was permanently and totally disabled due to the combined effects of the 1991 injury and the 1992 and 1993 recurrences and her preexisting condition of chronic obstructive pulmonary disease. The Second Injury Fund was joined as a party, and it denied any liability for benefits, while Therma Tru denied that Ellison is permanently and totally disabled.

Medical evidence presented to the administrative law judge included reports from Dr. Harford, whose notes reflected that Ellison had suffered a back injury at work on May 8, 1991, which caused her severe pain resulting in numbness and tingling into her left leg and foot. She was released to return to work on October 31, with specific instructions not to push any carts by herself. Ellison returned to Dr. Harford on December 7, 1992, stating that she had reinjured her back pulling carts, but that someone was helping her pull carts. He wrote, "She is just a small frail lady and I do not think she is going to manage to continue working in this type of work without injuring herself on a frequent basis." On January 21, 1993, Dr. Harford stated that Ellison was markedly improved, and he released her from his care but instructed her to never again push carts. On July 21, 1993, Dr. Harford stated that Ellison needed to change occupations; that she is not able to do factory work.

Dr. Stephen Anthony Heim, an orthopaedic surgeon, testified by deposition that Ellison was diagnosed with having a herniated disc in 1991, but that she did not require surgery. He stated that she was temporarily totally disabled on August 12, 1993. On August 20, he assigned her a 6% impairment rating. In doing so he stated that it would be difficult to divide the 6% impairment rating because it would be hard to determine how much of it is due to Ellison's underlying back condition and how much of it is due to her job-related injury in 1991. When he first saw her, Dr. Heim instructed her not to do any lifting or twisting and to return to him on September 25. Ellison did not keep her appointment. However, Ellison returned to him in 1997, after her attorney informed her that she needed to have another check-up.

In his deposition Dr. Heim stated:

> If Ms. Ellison's condition has not significantly improved since August 12, 1993, I would recommend that she use proper lifting techniques. I would ask her to keep her muscles in good condition and I would ask her to possibly occasionally wear a back brace

when she is doing things that are of high activity in nature. I would ask her to refrain from any repetitive bending at the waist and any lifting heavy loads. I would say 25 pounds or above from ground level. There is no medical reason for an employer not to allow Ms. Ellison to work within these restrictions.

Additionally, in a report dated February 6, 1997, Dr. Heim stated that Ellison was not a good candidate for vigorous activity that requires a lot of bending, stooping, and lifting. He stated, "She could have a sedentary job."

Various medical notes were also introduced showing that Ellison had seen several doctors who had diagnosed her with upper respiratory problems, including emphysema, chronic obstructive pulmonary disease, and recurrent acute bronchitis. In addition, several of the doctors had recommended that she stop smoking, but all the medical notes indicated that she had not done so. On October 11, 1993, Dr. Sills noted in his records that Ellison "had been given a note stating that she is unable to work due to her severe chronic obstructive pulmonary disease and back pain."

A pulmonary function report prepared by Dr. David R. Nichols was also introduced into evidence. Although not abstracted by Ellison in her second appeal to this court, the report was relied upon by the Commission. The report stated that Ellison had a mild obstructive pulmonary impairment and that the degree of functional impairment was found to be moderate.

Based upon evidence adduced at the hearing, the Commission determined that Ellison had a one-percent permanent impairment and a two-percent wage loss, and it absolved the Second Injury Fund of any liability. This court reversed the Commission and remanded the case, stating that the Second Injury Fund did have some liability in the case; that the Commission should have applied the law as it existed in 1991, rather than Act 796 of 1993; and we instructed the Commission to consider the applicability of the odd-lot doctrine to Ellison. *See Ellison v. Therma Tru*, 66 Ark. App. 286, 989 S.W.2d 987 (1999).

Following our remand, the Commission delivered an opinion finding that the odd-lot doctrine was not applicable to Ellison because she had not proven that she was permanently and totally

disabled. It also found that she has a wage-loss disability of 8% to the body as a whole. The Commission stated that, at the time of the hearing, Ellison was 61 years old, that she had a 10th grade education, and that the majority of her work had included tasks involving labor-intensive activity in an industrial setting. In its opinion, the Commission considered Ellison's testimony that she has constant pain in her back that does not allow her to sit or stand for long periods of time. She said that she has respiratory problems, and that those problems, coupled with her back injury, would not allow her to continue to work.

However, the Commission found that she had not introduced any credible evidence from a physician or from a vocational counselor that she is totally disabled. The Commission, instead, relied upon testimony from Dr. Heim, the only physician that had treated her since 1993, who found that even though she was not a good candidate for vigorous activity that requires a lot of bending, stooping, and lifting, she was improving slightly and that she could maintain a sedentary job. The Commission also took note of Dr. Harford's opinion that Ellison was going to need to find another line of work.

In addition, the Commission chose specifically not to believe Ellison's testimony that her respiratory condition had recently deteriorated because medical evidence had shown the opposite. It relied upon a physician's testimony that Ellison had a *mild* obstructive pulmonary impairment with a *moderate* degree of functional impairment.

The Commission then wrote:

> In light of Dr. Nichols' conclusion in 1994 that the claimant had a mild obstructive pulmonary impairment with a moderate degree of functional impairment, and in light of Dr. Heim's assessment in 1997 that the claimant could return to sedentary work, we are not persuaded by the claimant's testimony that no employer would hire her in her condition. The claimant has acknowledged that she has not sought any employment from her employer (other than from the respondent) since she last worked in 1993. In light of the medical reports of Dr. Nichols and Dr. Heim, we are not persuaded by the claimant's testimony that she has presented a prima facie case that she fits within the odd lot category.

The Commission then ordered the Second Injury Fund to pay Ellison an 8% impairment to her wage-earning capacity and Therma Tru to pay for the 1% anatomical impairment rating to the body as a whole.[1] Ellison brings this appeal contending that the Commission erred in finding that she is not permanently and totally disabled and that the odd-lot doctrine is not applicable.

■■ On appellate review, we view the evidence in the light most favorable to the findings of the Commission and give the testimony its strongest probative force in favor of the action of the Commission. *Patterson v. Arkansas Dep't of Health,* 70 Ark. App. 182, 15 S.W.3d 701 (2000); *Buford v. Standard Gravel Co.,* 68 Ark. App. 162, 5 S.W.3d 478 (1999). Our standard of review on appeal is whether the Commission's decision is supported by substantial evidence. *Patterson v. Arkansas Dep't of Health, supra; Buford v. Standard Gravel Co., supra.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.*Patterson v. Arkansas Dep't of Health, supra; Buford v. Standard Gravel Co., supra.* We do not reverse a decision of the Commission unless we are convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached. *Patterson v. Arkansas Dep't of Health, supra; Buford v. Standard Gravel Co., supra.* In cases where the Commission's denial of relief is based upon the claimant's failure to prove entitlement by a preponderance of the evidence, the substantial-evidence standard of review requires us to affirm the Commission's action if its opinion displays a substantial basis for the denial of relief. *Patterson v. Arkansas Dep't of Health, supra.*

■ Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Arkansas Dep't of Health v. Williams,* 43 Ark. App. 169, 863 S.W.2d 583 (1993). We defer to the Commission's findings on what testimony it deems to be credible. *Id.* When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and

---

[1] Neither the Second Injury Fund nor Therma Tru cross-appealed the Commission's award, leaving the only issue on appeal whether Ellison is permanently and totally disabled under the odd-lot doctrine.

translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Jordan v. Tyson Foods, Inc.*, 51 Ark. App. 100, 911 S.W.2d 593 (1995).

■ The rules of appellate review in workers' compensation cases insulate the Commission from judicial review and properly so, as it is a specialist in the area and this court is not. *Buford v. Standard Gravel Co., supra.* However, a total insulation would obviously render the appellate court's function in reviewing these cases meaningless. *Buford v. Standard Gravel Co., supra.*

■ The odd-lot doctrine provides benefits for an employee who is injured to the extent that he can only perform services that are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist and he may be classified as totally disabled. *Patterson v. Arkansas Dep't of Health, supra.* The doctrine applies to employees who are able to work only a small amount; the fact that they can work some does not preclude them from being considered totally disabled if their overall job prospects are negligible. *Patterson v. Arkansas Dep't of Health, supra.* An injured worker who relies upon that doctrine has the burden of making a prima facie showing of being in the odd-lot category based upon the factors of permanent impairment, age, mental capacity, education, and training. *Patterson v. Arkansas Dep't of Health, supra.* If the worker does so, the employer then has the burden of showing some kind of suitable work is regularly and continuously available to him. *Patterson v. Arkansas Dep't of Health, supra.* In considering factors that may affect an employee's future earning capacity, this court considers the claimant's motivation to return to work, since a lack of interest or a negative attitude impedes our assessment of the claimant's loss of earning capacity. *City of Fayetteville v. Guess*, 10 Ark. App. 313, 663 S.W.2d 946 (1984). In addition, although a claimant's failure to participate in rehabilitation services does not bar his claim, the failure may impede a full assessment of his wage-earning loss by the Commission. *Nicholas v. Hempstead County Memorial Hosp.*, 9 Ark. App. 261, 658 S.W.2d 408 (1983). Section 24 of Act 796 of 1993, codified at Ark. Code Ann. § 11-9-522(e) (Repl. 1996), abolished the odd-lot doctrine for injuries occurring after July 1, 1993. However, because Ellison's injuries occurred in 1991, with recurrences in 1992 and 1993, the doctrine is applicable to her case.

Ellison argues on appeal that the Commission erred in not finding that she is permanently and totally disabled because, on remand, the Commission again adopted the restrictive view of disability consistent with Act 796 of 1993, rather than applying the law in effect in 1991. She argues that her work opportunities are restricted due to her age, her past work experience, and the fact that she cannot stand or sit for long periods of time. In addition, she discounts Dr. Heim's medical opinion that she could maintain a sedentary job because, she contends, Dr. Heim only took into account her orthopaedic problems, and not her respiratory problems. She also states that the Commission's decision is contrary to Dr. Sills's opinion that Ellison was unable to work due to her severe respiratory problems and back pain. As evidence that the Commission applied a "restrictive interpretation of the law," Ellison points to the fact that she was awarded only an 8% wage-loss disability.

In addition, she argues that in order to prevent her from being classified under the odd-lot doctrine, Therma Tru has the burden of going forward with evidence by showing that some kind of suitable work is regularly and continuously available to her.

We disagree with Ellison, and find that there is substantial evidence to support the Commission's findings. Although she testified that she is unable to maintain a job due to her back condition combined with her respiratory condition, testimony was presented from Dr. Heim that she is improving and that she could maintain a sedentary job. Ellison also stated during her testimony that she thought she "could do sedentary work."

Even though Dr. Sills stated that, as of 1993, Ellison was unable to work due to severe congestive obstructive pulmonary disease, Dr. Nichols stated in 1994 that she had mild obstructive pulmonary impairment resulting in a moderate degree of functional impairment . The Commission specifically relied upon Dr. Nichols's testimony in rendering its decision.

■■ As we have stated, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Arkansas Dep't of Health v. Williams, supra.* We defer to the Commission's findings on what testimony it deems to be credible. *Arkansas Dep't of Health v.*

*Williams, supra.* When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. When the Commission chooses to accept the testimony of one physician over another in such cases, we are powerless to reverse that decision. *Patterson v. Arkansas Dep't of Health, supra.* Here, the Commission chose to believe Dr. Heim's testimony that Ellison could do sedentary work. In addition, she stated that she could. Therefore, we find that there is substantial evidence to support the Commission's opinion that Ellison did not make a prima-facie case that she is permanently and totally disabled and, therefore, does not fall within the odd-lot doctrine.

In addition, we reject Ellison's argument that she should be considered to be permanently and totally disabled under the odd-lot doctrine because Therma Tru did not present evidence that sedentary work is available. The burden did not shift to Therma Tru to show work that was readily and consistently available and within Ellison's capabilities because, as the Commission found, Ellison never made a prima facie case that she was permanently and totally disabled. *See Patterson v. Arkansas Dep't of Health, supra; Buford v. Standard Gravel Co., supra.*

The dissenting judges disagree with the Commission's conclusion that Ellison failed to make a prima-facie case that she fell within the odd-lot doctrine, and they suggest that the Commission improperly considered the credibility of witnesses and the preponderance of the evidence in reaching that conclusion. No doubt, there is room to disagree with the Commission's opinion, but this court's duty on review is to determine whether there is any substantial evidence in the record that supports the findings of the Commission. In doing so, we are not to substitute our judgment concerning matters of credibility for that of the Commission and the Commission is the trier of fact. *Riverside Furniture Co. v. Loyd,* 42 Ark. App. 1, 852 S.W.2d 147 (1993); *Jackson Cookie Co. v. Fausett,* 17 Ark. App. 76, 703 S.W.2d 468 (1986). While it is also true, as the dissent suggests, that the issue of whether the appellant made a prima-facie showing that she fell under the odd-lot doctrine is a question of law, it is equally true that the Commission cannot answer that question in a vacuum. The Commission must first determine the facts to which the law is to be applied, and when the facts are in dispute, the Commission must determine what evidence is credible and in which party's favor the evidence preponderates.

*Riverside Furniture Co. v. Loyd, supra; Jackson Cookie Company v. Fausett, supra.*

The *Werbe v. Holt*, 217 Ark. 198, 229 S.W.2d 225 (1950), and *Brock v. Bates*, 227 Ark. 173, 297 S.W.2d 938 (1957), cases cited in the dissenting opinion are simply not applicable to the case at bar. First, they are not workers' compensation cases. Second, they involve the interpretation of a now-nonexistent statute that formerly provided for a demurrer to the evidence in chancery and probate cases. *Werbe* and *Brock* stand for nothing more than what was formerly a well-established rule that in passing upon demurrers to the evidence in chancery and probate cases, the trial court was required to give the evidence its strongest probative force in favor of the plaintiff and to rule against the plaintiff only when the plaintiff's evidence, when so considered, fails to make a prima-facie case.

The dissent has cited no authority to support its contention that, in workers' compensation cases, the Commission cannot consider the credibility of witnesses and the weight of the evidence in determining whether a claimant has presented a prima-facie case that he falls within the odd-lot doctrine. Even in *Buford v. Standard Gravel Co.*, 68 Ark. App. 162, 5 S.W.3d 478 (1999), relied on by the dissent, we recognized the obligation of the Commission to consider *all* competent evidence relating to a claimant's disability in determining the applicability of the odd-lot doctrine. Also, in Ellison's first appeal to this court, when we remanded the case to the Commission to consider the application of the odd-lot doctrine, we instructed the Commission to consider all competent evidence relating to her incapacity, including the age, education, medical evidence, work experience, and other matters reasonably expected to affect the claimant's earning power. *See Ellison v. Therma-Tru, supra.* Nor does the dissent cite authority to support its position that the Commission may consider only the evidence that is favorable to the claimant.

Finally, the dissent suggests, again without citation to any authority, that this court, in reviewing the Commission's finding that Ellison did not prove that she fell within the odd-lot doctrine, cannot apply the substantial-evidence standard of review. Ironically, in every odd-lot case cited by the dissenting opinion in support of its position that Ellison met the requirements for odd-lot consideration, the substantial-evidence standard of review was applied by this

court.[2]

Affirmed.

HART, KOONCE, STROUD, MEADS, and ROAF, JJ., agree.

ROBBINS, C.J., and GRIFFEN and NEAL, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. I would reverse this decision and remand to the Workers' Compensation Commission with directions that appellant be awarded permanent and total disability benefits. First, the Commission erred as a matter of law when it held that appellant failed to make a *prima facie* case under the odd-lot doctrine. Second, the Commission improperly undertook a credibility assessment and weighed the preponderance of the evidence in deciding that appellant had not made a *prima facie* case under the odd-lot doctrine. Finally, nothing authorizes this court to review the Commission's errant decision on whether appellant made a *prima facie* showing under the odd-lot doctrine a pure question of law using a substantial evidence standard of review applicable to the Commission's findings of fact. Therefore, I must dissent.

Because appellant proved that she is unable to engage in sustained effort involving sitting, standing, walking, or lifting due to her compensable injury and other health condition, her advanced age, education, and other vocational history, the Commission should have held as a matter of law that appellant is *prima facie* within the odd-lot category of disabled workers and that the burden shifted to the employer to show evidence of suitable work that is regularly and continuously available to her. We have reversed the

---

[2] *Patterson v. Arkansas Dep't of Health*, 70 Ark. App. 182, 15 S.W.3d 701 (2000)("we review the evidence and all inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by *substantial evidence*."); *Buford v. Standard Gravel Co.*, 68 Ark. App. 162, 5 S.W.3d 478 (1999) ("Our standard of review on appeal is whether the decision of the Commission is supported by *substantial evidence*."); *Moser v. Arkansas Lime Co.*, 40 Ark. App. 108, 842 Ark. 456 (1992) ("the *substantial evidence* standard of review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief."); *M.M. Cohn Co. et al. v. Pauline Haile*, 267 Ark. 734, 589 S.W.2d 600 (Ark. App. 1979) ("We hold there is *substantial evidence* this claimant is totally disabled."); *Walker Logging v. Paschal*, 36 Ark. App 247, 821 S.W.2d 786 (1992) ("When reviewing a decision of the Workers' Compensation Commission, we must view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by *substantial evidence*.").

Commission and remanded with directions to award permanent and total disability benefits in similar situations where employers failed to produce proof of suitable work after injured workers presented evidence that the effects of their injuries combined with age, education, and vocational history put them in the odd-lot category of disabled workers. *See Patterson v. Arkansas Dep't. of Health*, 70 Ark. App. 182, 15 S.W.3d 701 (2000); *Buford v. Standard Gravel Co.*, 68 Ark. App. 162, 5 S.W.3d 478 (1999); *Moser v. Arkansas Lime Co.*, 40 Ark. App. 108, 842 S.W.2d 456 (1992).

Moreover, a half century of Arkansas law holds that it is reversible error to undertake credibility assessments or weighing of the evidence in deciding whether a party has presented *prima facie* evidence. *See Brock v. Bates*, 227 Ark. 173, 297 S.W.2d 938 (1957); *see also Werbe v. Holt*, 217 Ark. 198, 229 S.W.2d 225 (1950). The Commission was plainly wrong to ignore this body of law, and the majority is wrong when it treats the Commission's error as a credibility issue subject to the substantial evidence standard of review.

Appellant was sixty-one years of age when she testified before the Commission in her claim for permanent total disability benefits; she is now sixty-five. She has a tenth-grade education. Appellant suffers from chronic obstructive pulmonary disease, residual effects from her May 8, 1991, work-related back injury, and undisputed back problems that pre-dated the compensable injury. Despite these difficulties, appellant continued working for Therma Tru until 1993 when a company physician removed her from her job. She testified at the hearing that she is willing to attempt sedentary work even though she does not know what sedentary work means. There is no evidence in the record about employment that a person of her limited physical ability, education, and vocational history can regularly perform. Although physicians have recommended that appellant pursue sedentary work and she testified that she was willing to do sedentary work, appellant testified she cannot engage in sustained walking, standing, or other effort without experiencing breathing difficulty due to her respiratory disease. Even sedentary workers such as lawyers and judges must be able to sit for sustained periods of time. Appellant also testified that constant back pain prevents her from sitting, standing, or walking for sustained periods of time. Appellant introduced proof that she cannot do so. Hence, it is astounding that the majority now affirms the Commission's

bizarre decision that appellant failed to make a *prima facie* case under the odd-lot doctrine.

Act 796 of 1993 abolished the odd-lot doctrine for permanent disability claims in Arkansas based on injuries that occurred after July 1, 1993 (*see* Ark. Code Ann. § 11-9-522(e) (Repl. 1996)); however, the doctrine was alive and fully applicable to appellant's disability claim stemming from her 1991 compensable injury and its recurrences.[1] Until the General Assembly abolished the odd-lot doctrine by Act 796 of 1993, Arkansas had long recognized that one need not be utterly and abjectly helpless to be deemed totally disabled. Rather, our decisions hold that the odd-lot doctrine refers to employees who are able to work only a small amount; the fact that they can work some does not preclude them from being considered totally disabled if their overall job prospects are negligible. *See M.M. Cohn v. Haile*, 267 Ark. 734, 589 S.W.2d 600 (Ark. App. 1979). We have also held that when the overall evidence places a worker *prima facie* within the odd-lot category, the employer bears the burden of proving the existence of suitable work that is regularly and continuously available to the worker. *See Walker Logging v. Paschal*, 36 Ark. App. 247, 821 S.W.2d 786 (1992). *See also M.M. Cohn, supra.*

As stated in *Larson's Workers' Compensation Law* treatise:

> Under the odd-lot doctrine, which is accepted in virtually every jurisdiction, total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market. The essence of the test is the probable dependability with which claimant can sell his or her services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above crippling handicaps.

*Id.* at § 83.01. Larson traced the origin of the term "odd-lot" to the King's Bench case of *Cardiff Corp. v. Hall*, 1 K.B. 1009 (1911),

---

[1] The odd-lot doctrine is accepted in "virtually every jurisdiction" according to *Larson's Workers' Compensation Law* treatise. *See Larson's* at § 83.01. Arkansas workers are now among the rare exceptions to whom the doctrine no longer applies, thanks to Act 796 of 1993

where Judge Moulton addressed the rationale for the phrase and its bearing on the issue of total disability as follows:

> [T]here are cases in which the onus of shewing that suitable work can in fact be obtained does fall upon the employer who claims that the incapacity of the workman is only partial. If the accident has left the workman so injured that he is incapable of becoming an ordinary workman of average capacity in any well known branch of the labour market—if in other words the capacities for work left to him fit him only for special uses and do not, so to speak, make his powers of labour a merchantable article in some of the well known lines of the labour market, I think it is incumbent upon the employer to shew that such special employment can in fact be obtained by him. If I might be allowed to use such an undignified phrase, I should say that if the accident leaves the workman's labour in the position of an 'odd lot' in the labour market, the employer must shew that a customer can be found who will take it . . .

*Id.* at 1 K.B. 1020-21.

Judge Benjamin Cardozo (who later became an associate justice of the U. S. Supreme Court) adeptly described the plight faced by such a disabled worker in *Jordan v. Decorative Co.*, 230 N.Y. 522, 130 N.E. 634 (1921), as follows:

> He [the disabled worker] was an unskilled or common laborer. He coupled his request for employment with notice that the labor must be light. The applicant imposing such conditions is quickly put aside for more versatile competitors. Business has little patience with the suitor for ease and favor. He is the "odd lot" man, the "nondescript in the labor market." Work, if he gets it, is likely to be casual and intermittent. . . . Rebuff, if suffered, might reasonably be ascribed to the narrow opportunities that await the sick and the halt.

*Id.*, at 525, 130 N.E. at 635-36.

In *M.M. Cohn, supra,* Judge David Newbern wrote that the "odd lot doctrine refers to employees who are able to work only a small amount. The fact they can work some does not preclude them from being considered totally disabled if their overall job prospects are negligible." *See M.M. Cohn,* 267 Ark. at 736, 589 S.W.2d at 602. In that case our court affirmed an award of permanent and total disability benefits a woman sixty-two years of age,

who suffered a shoulder fracture in a workplace fall, which left her unable to do anything but limited work.

In *Walker Logging, supra,* we affirmed the Commission's award of permanent and total disability benefits under the odd-lot doctrine to a man in his late forties whose right knee was injured when a tree fell on him while he worked as a timber cutter. In that case, the Commission held that based upon the claimant's mental capacity, age, education, work experience, and physical impairment and limitations, he established a *prima facie* case that he fell within the odd-lot category, which shifted to the employer the burden of producing evidence that some kind of suitable work was regularly and continuously available to him.

Last year we reversed and remanded for award of permanent total disability benefits a case where the Commission denied a claim asserted by a forty year-old worker who had fifteen percent permanent anatomical impairment from two back surgeries, was unable to speak above a whisper due to a crushed larnyx suffered in a prior workplace accident for a different employer, and who was a high school graduate. *See Buford v. Standard Gravel Co.,* 68 Ark. 162, 5 S.W.3d 478 (1999). In that case, the Commission was unimpressed with the appellant's credibility and motivation to return to work based on proof that he drank beer, enjoyed deer hunting, fishing, and camping, and his ability to shop with his wife, garden, and mow his lawn. We rejected the Commission's analysis and reasoned as follows:

> When Buford's age, education, work experience, and medical restrictions are considered together, Buford made a clear and convincing prima facie case that he was totally and permanently disabled by his throat injury and his three back injuries. The burden then shifted to the employer to show that work is readily and consistently available within appellant's restrictions in his hometown of El Dorado, Arkansas. The employer failed to meet that burden . . . The Commission should have awarded Buford permanent and total disability benefits. We reverse and remand for it to enter the order.

*Id.* at 169-70, 5 S.W.3d 483-84.

Earlier this year, we reversed the Commission in another odd-lot case and remanded so that permanent total disability benefits could be awarded to a forty-seven year old registered nurse who

worked in an administrative position for the Arkansas Department of Health when she suffered a back injury after reaching across her desk to plug in a surge protector. *See Patterson v. Arkansas Dep't. of Health,* 70 Ark. App. 182, 15 S.W.3d 701 (2000). Patterson eventually underwent five spinal surgeries, developed the painful condition of arachnoiditis in the lower thecal sac, developed a cerebrospinal fluid leak, and suffered from migraine headaches, Sjogren's syndrome, depression, and other conditions. Due to these medical problems, she testified that she spent most of the day in bed because of pain, generally spent the morning sitting in a recliner, and was unable to walk any distance. The Commission found that she had not been rendered permanently and totally disabled, stating:

> Even though she is severely limited by her physical condition and the effects of the medication related to her compensable injury, she has been able to undertake limited employment by being on call, being available to give advice over the telephone, and by doing paperwork, employment which is not constant in its demands on the claimant's time, but which is not full time and are [sic] not widely available with other employers.

*Id.* at 191, 15 S.W.3d at 707. The appellant argued on appeal that the Commission erred because the odd-lot doctrine applied to her 1991 injury. We agreed, and reversed and remanded for an award of permanent total disability benefits, stating:

> [W]e think it significant that the . . . ALJ's opinion states that appellant has performed some employment which is not constant in its demands on the claimant's time, but which is not full-time and is not widely available with other employers. This language substantially tracks the language required for a finding of total disability under the odd-lot doctrine.
>
> Considering appellant's obvious physical impairment, work experience, and medical evidence, we hold that appellant made a prima facie case that she was totally and permanently disabled as a result of her five surgeries necessitated by her compensable injury, and the burden shifted to appellee to show that work is readily and consistently available within appellant's capabilities. Appellee did not meet this burden, and indeed the law judge recognized that any work appellant performed was not full-time and not readily available with other employers. The Commission should have awarded appellant permanent and total disability benefits; therefore, we reverse and remand for an award of benefits.

*Id.*, 15 S.W.3d 708.

We also reversed the Commission in a previous opinion after the Commission refused to analyze this case under the odd-lot doctrine.[2] *See Ellison v. Therma Tru*, 66 Ark. App. 286, 989 S.W.2d 987 (1999). When the Commission considered the case on remand from our previous decision, it did not determine if the employer met its burden of producing evidence of employment that is regularly and continuously available in the labor market within appellant's limited capacity in light of our decisions applying the odd-lot doctrine. Instead, the Commission held that appellant failed to make a *prima facie* showing that she falls in the odd-lot category.

The Commission announced its decision regarding appellant's claim for permanent and total disability benefits as follows:

> We find that the record fails to establish by a preponderance of the credible evidence that the claimant is totally disabled *or that she has established a prima facie case that she falls within the odd lot (sic) category. In reaching this conclusion, we initially note that the claimant has failed to present any evidence from a physician or from a vocational counselor indicating that the claimant is currently totally incapacitated from working or indicating that the claimant is injured to such an extent that any employment services she can perform are so limited in quality, dependability, or quantity that a reasonably stable market does not exist for her services.* To the contrary, the only physician to examine the claimant since 1993 was Dr. Heim. Dr. Heim indicated on February 6, 1997, that the claimant's back-related symptoms were slightly improved from 1993, and Dr. Heim opined that the claimant could have a sedentary job. Dr. Heim did not schedule any follow-up appointments, but indicated that he would see the claimant on an as-needed basis if her symptoms worsened.
>
> With regard to the claimant's respiratory condition, and her testimony that her condition had worsened over the last two to three years, and more so over the last two to three months, the claimant

---

[2] Our previous opinion also reversed the Commission because it improperly determined appellant's anatomical impairment based on applying the "major cause" analysis of Act 796, specifically Ark. Code Ann. § 11-9-102(F)(1987), and omitted consideration of appellant's obstructive pulmonary disease, which had been fully corroborated by the medical evidence and uncontradicted by any other proof. To that extent, the Commission's decisions in this case demonstrate a troubling tendency to employ Act 796 reasoning even where the record abundantly shows that Act 796 has no bearing whatsoever.

has failed to present any medical evidence to corroborate her testimony that her respiratory condition had, in fact, recently deteriorated. As the Court noted, Dr. Sills' records indicate that he gave the claimant a note on October 11, 1993, stating that she was unable to work due to her *severe* COPD and back pain. However, the claimant subsequently underwent pulmonary function testing on January 10, 1994, performed by Dr. David Nichols. His interpretation was *mild* obstructive pulmonary impairment with a *moderate* degree of functional impairment. *In light of Dr. Nichols' conclusion in 1994 that the claimant had a mild obstructive pulmonary impairment with a moderate degree of functional impairment, and in light of Dr. Heim's assessment in 1997 that the claimant could return to sedentary work, we are not persuaded that no employer would hire her in her condition. The claimant has acknowledged that she has not sought any employment from any employer (other than from the respondent) since she last worked in 1993. In light of the medical reports of Dr. Nichols and Dr. Heim, we are not persuaded by the claimant's testimony that she has presented a prima facie case that she falls within the odd lot category.*

(Emphasis added.)

The Commission's opinion in the instant appeal does not suggest how its evaluation of the opinions by Dr. Nichols and Dr. Heim nullified the appellant's testimony that she cannot engage in sustained walking, standing, sitting, or other effort due to her back pain and respiratory condition. Nor does the Commission's opinion favor us with clues about how a worker in her sixties with a tenth-grade education and lifelong history of manual labor might not suffer a competitive disadvantage for employment when she suffers from a disabling back injury and respiratory condition, even if those conditions are considered "mild" or "moderate." Arkansas law does not require undisputed medical testimony to establish that a claimant has sustained a substantial decrease in her capacity to compete for employment in the open market. One need only read our recent nine-judge decision in *Patterson, supra,* to understand that even in the face of conflicting medical evidence and proof that a disabled worker can perform sedentary work, we decide, *as a matter of law,* whether the worker's impairment, work experience, age, education, and other factors affecting disability constitute a *prima facie* case for application of the odd-lot doctrine.

Therma Tru could have rebutted appellant's *prima facie* case by simply producing evidence of regularly and continuously available sedentary work in the labor market. But Therma Tru failed to do

so. Like the employers in *Buford* and *Patterson, supra,* Therma Tru failed to produce any proof of regularly and continuously available sedentary work in the labor market for someone in appellant's condition. Thus, the Commission should have awarded permanent total disability benefits to appellant consistent with the long line of Arkansas cases that apply the odd-lot doctrine. The Commission's refusal to do so after we reversed it for failing to apply the odd-lot doctrine to the case manifests a calculated intent to avoid applying the odd-lot doctrine at all, as if Act 796 of 1993 had retroactive effect, despite our previous decision holding that an Act 796 analysis had no place in determining the outcome of this 1991 claim.

Odd-lot category determinations are no different from other situations involving *prima facie* evidence. *Black's Law Dictionary* defines *prima facie* evidence as "evidence good and sufficient on its face; [s]uch evidence as, *in the judgment of the law,* is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient." BLACK'S LAW DICTIONARY 1190 (6th ed. 1990) (emphasis added). *See also Inge v. Walker,* 70 Ark. App. 114, 15 S.W.3d 348 (2000). The case of *Swink v. Giffin,* 333 Ark. 400, 970 S.W.2d 207 (1998), shows that it is reversible error for a trier of fact to weigh the evidence in determining whether a party has established a *prima facie* case. In that case, a chancellor granted a defense motion to dismiss at the close of the plaintiff's case. In addressing the chancellor's decision, Justice David Newbern wrote:

> The question, generally, is whether the plaintiffs presented a prima facie case, just as in jury trials where a verdict may be in prospect. Our holding is that the dismissal was premature, and thus we reverse and remand the case. . .
>
> . . .
>
> While we understand that the Chancellor's action was based on her assessment of the credibility of the testimony presented by the plaintiffs, it was error for her to have made that assessment prior to the conclusion of the evidentiary portion of the trial. In a long line of cases, beginning with *Werbe v. Holt,* 217 Ark. 198, 229 S.W.2d 225 (1950), we have held that a chancellor's duty in the circumstance presented here is to review the defense motion for dismissal at the conclusion of the plaintiffs' case by deciding whether, if it were a jury trial, the evidence would be sufficient to present to the jury. . . .

In *Neely v. Jones*, 232 Ark. 411, 337 S.W.2d 872 (1960), we recited the same rule as in the *Werbe* case. . . Justice George Rose Smith wrote for a unanimous court:

> "Ever since the decision in *Werbe v. Holt* [citation omitted], we have consistently held that a demurrer to the plaintiff's evidence should be sustained only if that proof, viewed in its most favorable light, would present no question of fact for a jury if the case were being tried at law. In such a case the chancellor *does not exercise fact-finding powers that involve determining questions of credibility* or of the preponderance of the evidence. *Brock v. Bates*, 227 Ark. 173, 297 S.W.2d 938 (1957). [Emphasis supplied.]

> *Neely v. Jones*, 234 Ark. 812, 813, 354 S.W.2d 726, 727 (1962). Other cases in which we have reached the same result include *Minton v. McGowan*, 253 Ark. 945, 490 S.W.2d 136 (1973); *Pults v. Pults*, 236 Ark 434, 367 S.W.2d 120 (1963); and *Wood v. Brown*, 235 Ark. 500, 361 S.W.2d 67 (1962).

333 Ark. at 403-04, 970 S.W.2d at 208-09 (emphasis in original).

Thus, for a half century Arkansas law has recognized that whether a party has presented *prima facie* evidence is not a question of fact to be determined by either the preponderance of the evidence or by assessing credibility. Yet the Commission expressly committed that error, as demonstrated by its statement that "*we are not persuaded by the claimant's testimony that she has presented a prima facie case that she falls within the odd lot category.*"

I refuse to stand Arkansas law on its head and compound the Commission's blatant error by incorrectly applying a substantial evidence standard of review to a plain question of law. Whether a party presents *prima facie* evidence of a proposition is an issue of legal sufficiency, not a matter of credibility or persuasiveness. In this case the relevant inquiry is whether the proof was legally sufficient to establish that appellant is in the odd-lot category of disabled workers, meaning that she cannot obtain and hold regular and continuous employment unless extraordinary good will, sympathy, or other similar special circumstances operate in her favor. The Commission recounted the proof about appellant's compensable back injury, respiratory disease, limited education, manual labor work history, and the fact that those conditions affected appellant to the point that Therma Tru's doctor directed that she discontinue trying to

work. Appellant has testified that she is unable to work. She plainly made a *prima facie* showing of being in the odd-lot category. Our decisions in *Patterson, Buford,* and *Arkansas Lime Co., supra,* and a host of other odd-lot cases, when coupled with other appellate decisions holding that credibility and persuasiveness are not proper matters to be considered in deciding if a party has made a *prima facie* case, deserve more deference than the spurious reasoning employed by the Commission in this case.

What is equally disquieting is that the majority has analyzed the Commission's decision on whether appellant made a *prima facie* case under the substantial evidence standard of review, the standard we use to review the Commission's findings of fact. *Werbe* and the other decisions previously cited show that whether a party has made a *prima facie* case is a question of law; we review those rulings to determine if the law regarding legal sufficiency was properly applied, not whether the ultimate decision reached by the trier of fact is supported by substantial evidence. The majority does not burden its opinion with supporting authority for its unprecedented conclusion with good reason; no such authority can be found anywhere else in American jurisprudence.

The Commission was wrong when it assessed appellant's credibility to determine whether she made a *prima facie* showing of being in the odd-lot category of disabled workers. The Commission was wrong when it denied appellant's claim for permanent total disability benefits despite the employer's failure or refusal to prove that a single job existed for someone with appellant's physical restrictions, tenth grade education, and history of performing only manual labor. The majority is wrong to turn its back on the entire history of Arkansas case law regarding the odd-lot doctrine and the equally authoritative record of our case law showing that it is reversible error to assess credibility and weigh the evidence in determining whether a party has made a *prima facie* case. Therefore, I respectfully dissent and hope the Arkansas Supreme Court will grant review and reverse the Commission's unfair result and misguided reasoning.

I am authorized to state that ROBBINS, C.J., and NEAL, J., join this opinion.