2011 Ark. App. 599

**Patricia HRUSKA, Appellant**

v.

**BAXTER REGIONAL MEDICAL CENTER, Risk Management Resources, Death & Permanent Total Disability Fund, Second Injury Fund, Appellees.**

No. CA 10–1149.

Court of Appeals of Arkansas.

Oct. 5, 2011.

Frederick Strawn Spencer, Mountain Home, for appellant.

Melissa Faye Wood, Little Rock, for appellees.

WAYMOND M. BROWN, Judge.

Patricia Hruska sustained compensable knee injuries while working as a cashier for appellee Baxter Regional Medical Center ("Baxter"). She appeals from a September 13, 2010 ruling by the Workers' Compensation Commission that she is not permanently and totally disabled and is not entitled to an ultrasound[1] recommended by her physician. Because the Commission's decision was supported by substantial evidence, we affirm.

## Facts

On April 23, 2002, while working at Baxter, the appellant slipped on a wet floor and fell onto both of her knees. She was sixty years old at the time. An MRI scan

---

**1.** The study recommended in the doctor's note is an ultrasound, but is referred to in the appellant's brief also as a venous Doppler study.

showed a tear to the meniscus of both knees. Dr. Thomas Knox performed bilateral arthroscopies on August 21, 2002, and released Ms. Hruska to work with restrictions; namely, that she sit at least ten minutes every two hours and refrain from lifting soda cases. In November 2003, Ms. Hruska slipped again while working at Baxter and sustained a new tear to the meniscus of her right knee. Dr. Knox performed an arthroscopy and partial medial meniscectomy on her right knee on January 14, 2004. Both the April 2002 and November 2003 injuries were deemed compensable.

In February 2005, Ms. Hruska quit her job at Baxter and went to work full-time as a night cashier at Wal–Mart, which she testified was closer to her home and paid $1.30 more per hour. She returned to Dr. Knox in April 2005 with complaints of ongoing knee pain, and x-rays revealed osteoarthritis in the medial joint of her right knee, "consistent with previous meniscectomy and ongoing degeneration." Dr. Knox wrote a letter to Ms. Hruska's manager at Wal–Mart and asked that she be permitted to sit on a stool at her register for brief periods, "not to exceed more than 5 to 10 minutes per hour." Ms. Hruska changed her physician to Dr. Chris Arnold, whom she saw in January 2006 for continuing bilateral knee pain. Dr. Arnold and Dr. Knox (who provided a second opinion) both felt that x-rays showed advancing degenerative arthritis of the right medial joint and that Ms. Hruska should have a right total knee replacement.

Ms. Hruska went on a one-week mission trip to Honduras in March 2006. That September, she left her job at Wal–Mart and went to Exxon, where she worked as a cashier fifteen hours per week and "could sit and rest throughout the day." She left her job at Exxon in March 2007 in anticipation of her total knee replacement surgery, which Dr. Arnold performed on March 28, 2007. Ms. Hruska has not worked or sought employment since she left Exxon in March of 2007.

In August 2007, Ms. Hruska fell and landed directly on both knees, and felt a "pop." She went to see Dr. Arnold in September 2007 and reported to him that her right knee felt "great" and she was not having any problems with it, but she wanted to see if there was anything atypical with either knee. Dr. Arnold found that she had not broken or torn anything in the fall and noted continuing osteoarthritis in her left knee that was "aggravated with the fall" but "starting to settle down." Dr. Arnold also noted that Ms. Hruska declined his offer of further work-up. On October 2, 2007, Dr. Arnold stated that Ms. Hruska was capable of performing a sit-down job only and that she should not do any lifting, pushing, pulling, squatting, or climbing.

On March 25, 2008, Dr. Arnold gave Ms. Hruska a thirty-seven percent lower-extremity, or fifteen percent whole-body, impairment rating. Dr. Arnold stated in his office note from that visit that Ms. Hruska's right-knee replacement might someday require revision and that she would eventually need a left-knee replacement. He noted, however, that at that time her right knee replacement was "doing very well" and that she was "very happy" with it.[2]

Ms. Hruska returned to see Dr. Arnold on March 10, 2009. She had just returned from a four-month missionary trip to Honduras and had some swelling in her right leg. Dr. Arnold recommended an ultrasound to make sure the swelling was not

---

2. At the hearing before the ALJ, the parties stipulated that Ms. Hruska reached maximum medical improvement and the end of her healing period on March 25, 2008.

being caused by a blood clot, and stated in his office note, "We will try to get Worker's Comp approval." Ms. Hruska underwent a functional capacity evaluation (FCE) on May 7, 2009 and demonstrated the ability to work over the course of a normal workday at the "Light" level established by U.S. Department of Labor guidelines. Dr. Lowery Barnes performed an independent medical evaluation (IME) in June 2009 and likewise concluded that Ms. Hruska could work in a sedentary position. Dr. Barnes felt that she was not in need of treatment for either knee, did not need an ultrasound or Doppler study, and that any future treatment would not be related to her accidents at Baxter. However, Robert White, a vocational specialist who performed a vocational evaluation in May 2009, opined that Ms. Hruska did not meet the criteria for sedentary or light labor, and realistically could only work as a volunteer because she would need to take unscheduled breaks, arrive late and leave early, and miss work excessively.

Appellees paid Ms. Hruska benefits corresponding to the thirty-seven percent impairment rating, but disputed her entitlement to any permanent benefits exceeding that rating or to additional benefits for the ultrasound recommended by Dr. Arnold. A hearing was held on November 4, 2009, and the ALJ found that Ms. Hruska had failed to prove by a preponderance of the evidence that she was permanently and totally disabled or that she was entitled to an ultrasound and/or venous Doppler test of her right lower leg. In an opinion filed

September 13, 2010, the Workers' Compensation Commission affirmed and adopted the decision and findings of the ALJ.[3]

## Legal Standard

■■■ This court will not reverse the Commission's decision unless it is convinced that no fair-minded person with the same facts could have reached the conclusions arrived at by the Commission.[4] The court views the evidence and reasonable inferences deducible therefrom in a light most favorable to the Commission's decision,[5] and must affirm if the Commission's decision is supported by substantial evidence.[6] Substantial evidence is that relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[7] The question presented to this court is not whether the evidence would support findings contrary to those made by the Commission, but whether evidence supports the findings made by the Commission.[8] Even if the decision of the Commission is against the preponderance of the evidence, this court will not reverse where the Commission's decision is supported by substantial evidence.[9]

## Discussion

*I. Permanent and Total Disability Claim*

■■■ Arkansas Code Annotated section 11–9–519(e)(1) defines permanent and total disability as inability, because of com-

**3.** A clerical error in the opinion was corrected by a *nunc pro tunc* order filed on September 14, 2010.

**4.** *Dorris v. Townsends of Ark.*, 93 Ark. App. 208, 218 S.W.3d 351 (2005).

**5.** *Geo Specialty Chem. v. Clingan*, 69 Ark. App. 369, 13 S.W.3d 218 (2000).

**6.** *Ward v. Hickory Springs Mfg. Co.*, 97 Ark. App. 311, 248 S.W.3d 482 (2007).

**7.** *Wheeler Construction Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001).

**8.** *Snow v. Alcoa*, 15 Ark. App. 205, 691 S.W.2d 194 (1985).

**9.** *Id.*

pensable injury or occupational disease, to earn any meaningful wages in the same or other employment. The burden of proof lies on the claimant.[10] The Commission has the duty of determining disability based upon a consideration of medical evidence and other matters affecting wage loss, such as the claimant's age, education, and work experience.[11] In considering factors that may affect an employee's future earning capacity, the Commission considers the claimant's motivation to return to work, since a lack of interest or a negative attitude impedes assessment of the claimant's loss of earning capacity.[12]

■ Here, Ms. Hruska testified that she had a high school diploma, had worked as a real estate broker for seventeen years, then went into social work/counseling and ran a home for teenaged boys from 1991 to 2001. However, no evidence or argument showing why she could not return to real estate or social work was presented. At the same time, there was substantial evidence tending to show that Ms. Hruska could have returned to positions similar to the cashier jobs she held at Baxter and Exxon, the real estate or social work she performed for many years before she was injured, or other light or sedentary work.

In his evaluation of May 5, 2009, vocational specialist Robert White recommended that Ms. Hruska serve strictly as a volunteer, where her need for flexibility could be accommodated. Only two days later, however, an FCE showed that she demonstrated the ability to work in the "Light" category of labor. Specifically, under the "Light" category, she could lift eleven to twenty pounds on an occasional basis (0–33% of the workday) and one to ten pounds on a frequent basis (34–66% of

the workday). The FCE evaluator found that she could perform the following activities on a "constant" basis (67–100% of the workday): reaching with both hands, reaching with five-pound weight in either hand, handling with each hand and bi-manual handling, fingering with each hand and bi-manual fingering, and sitting. The FCE also found that Ms. Hruska could walk, carry up to fifteen pounds, push or pull a cart, balance, stoop, and stand on a frequent basis, and carry up to thirty pounds and climb stairs on an occasional basis.

The duties Ms. Hruska described from her job at Baxter—making coffee, running the cash register, cleaning tables, refilling the yogurt machine, and the like—fit within these parameters, particularly in light of her testimony that she had been allowed to sit on a stool and, following her injuries, was given help in lifting anything over ten pounds. Ms. Hruska also testified that she would sometimes lift up to forty pounds in the course of doing tasks around her home; was able to do her own chores, garden in beds that had been elevated, and use a chainsaw; and had spent four months in Honduras working as a missionary. In addition, Ms. Hruska testified that she does not intend to go back to work and has not applied for any jobs since she left Exxon in March 2007, which together with the FCE results and Ms. Hruska's own testimony about her capabilities and activities, constitute substantial evidence in support of the Commission's ruling.

The appellant argues that the Commission wrongly disregarded the findings of Robert White and credited those of the FCE performed two days after White's

10. Ark.Code Ann. § 11–9–519(e)(1)(2).

11. *Lee v. Alcoa Extrusion, Inc.,* 89 Ark. App. 228, 201 S.W.3d 449 (2005).

12. *Id.* (citing *Ellison v. Therma Tru,* 71 Ark. App. 410, 30 S.W.3d 769 (2000)).

evaluation.[13] This argument has no merit, as it is the exclusive province of the Commission to determine the credibility of witnesses and the weight to be given their testimony.[14] The Commission is not required to believe any witness, and it may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief.[15] It is well within the province of the Commission to choose, as it did here, to accept the testimony of one specialist over another, and we affirm the Commission's finding that the appellant failed to prove she was permanently and totally disabled.

## II. Ultrasound/Venous Doppler Study

Ms. Hruska also asks this court to reverse the Commission's finding that she is not entitled to the ultrasound recommended by Dr. Arnold, arguing that the Commission should have given Dr. Arnold's opinions greater weight than those of Dr. Barnes. This argument fails for two reasons. First, it was within the province of the Commission to choose to attribute greater weight and credibility to the opinions of Dr. Barnes.[16]

Second, there was substantial evidence to support the Commission's finding. Dr. Arnold recommended the ultrasound in March 2009 because Ms. Hruska was experiencing swelling in her leg after coming home from a four-month mission trip to Honduras, and Dr. Arnold wanted to make sure the swelling was not caused by a blood clot. When Dr. Barnes examined Ms. Hruska three months later, however, the swelling was gone and he saw nothing else to indicate that an ultrasound was needed. Dr. Barnes specifically concluded that Ms. Hruska did not need any treatment at that time for her right or left knee and had no symptoms to require left-knee replacement; that any knee replacement required in the future was not a result of her November 2003 injury at Baxter; and that she did not need a Doppler study at that time because whatever swelling there had been was fully resolved. Dr. Barnes felt that based on her FCE, any sedentary-type job would be "fine" for her, and he further stated:

> It is my impression that Ms. Hruska had long ago reached maximal medical improvement from her total knee replacement. In my opinion, her left knee problems, which apparently no longer exist, have resolved, and she has reached maximal medical improvement in the left knee as well. I see no indication for further worker's compensation treatment.

A fair-minded person with the same facts could conclude that the appellant failed to prove she was entitled to the ultrasound. Accordingly, we affirm.

Affirmed.

VAUGHT, C.J., and HOOFMAN, J., agree.

---

13. The ALJ specifically stated in his opinion that he credited the results of the FCE over White's findings.

14. *Honeysuckle v. Curtis H. Stout, Inc.*, 2010 Ark. 328, 368 S.W.3d 64.

15. *Ward v. Hickory Springs Mfg. Co., supra.*

16. *Honeysuckle, supra.*