

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-13-378

| | |
|---|---|
| BAKER HUGHES OILFIELD GALLAGHER BASSETT SERVICES, INC. | **Opinion Delivered** January 8, 2014 |
| APPELLANTS | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G200778] |
| V. | |
| CHRIS CHICK | |
| APPELLEE | AFFIRMED |

## RHONDA K. WOOD, Judge

Chris Chick hurt his back at work in October 2011. His employer agreed that the injury was compensable. Doctors placed Chick on light-duty work restrictions and eventually performed back surgery in April 2012. Chick contended that he was entitled to the surgery and temporary-total disability (TTD) benefits from January 2012 to May 2012. The Arkansas Workers' Compensation Commission agreed and awarded benefits. We affirm.

### I. *Additional Medical Treatment*

The first issue is whether the April 2012 back surgery was reasonable and necessary in connection with the compensable October 2011 back injury. Ark. Code Ann. § 11-9-508(a) (Repl. 2002). The Commission found that it was, and on appeal we view the evidence in the light most favorable to that decision and affirm if it is supported by

SLIP OPINION

substantial evidence. *Ellison v. Therma Tru*, 71 Ark. App. 410, 30 S.W.3d 769 (2000). At issue are Chick's pre-October 2011 back problems and, specifically, an April 2011 MRI. That MRI said that Chick had two lower-back disc protrusions. A December 2011 MRI reaffirmed degenerating discs at the same locations. Because Chick's compensable back injury happened in the interim (October 2011), his employer maintains that the surgery was not connected with the most recent injury but from a pre-existing problem. Otherwise, the December MRI would have new medical findings.

We disagree and affirm the Commission's decision on this point. Chick's brief points to differences between the April 2011 MRI and the December 2011 MRI:[1]

- **April 2011:** At L4–5, there is a central right paracentral disc protrusion indenting the subarachnoid space.

- **December 2011:** Small right paracentral and posterolateral disc protrusion L4-5 with mild right lateral recess stenosis and this could potentially have mild compressive effect upon the passing right L5 nerve root.

First, the December MRI showed both paracentral and posterolateral disc protrusions, while the April MRI only showed a paracentral protusion.[2] Second, the December MRI noticed possible nerve root compression, and on that point the April MRI was silent. Further, Dr. Terry Clark, after examining Chick in October 2011, concluded that "the cause of this [back] problem is related to work activities" and put Chick on restricted-duty work status. It is the Commission's duty to make credibility determinations, to weigh the

---

[1]Both MRIs identified disc protrusions at L4–5 and L5–S1. Surgery was performed only at L4–5, so our focus is that disc's diagnosis.

[2]Paracentral means "near a center." Posterolateral means "situated posteriorly [behind] and to one side." Dorland's Illustrated Medical Dictionary (30th ed. 2003).



evidence, and to resolve conflicts in the medical testimony and evidence. *Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 284 S.W.3d 91 (2008). The Commission gave more weight to the December 2011 MRI and concluded that Chick's surgery was unrelated to prior injuries. This finding, added with the other evidence, constitutes substantial evidence to support the Commission's finding that Chick's back surgery was reasonable and necessary in connection with his compensable October 2011 work injury.

## II. *Temporary-Total Disability Benefits*

The Commission also awarded Chick temporary-total disability benefits from January 2012 until May 2012. In so finding, it necessarily concluded that Chick was within his healing period and was unable to earn wages during that period. *See St. Joseph's Mercy Med. Ctr. v. Redmond*, 2012 Ark. App. 7, 388 S.W.3d 45. When Chick hurt his back in October 2011, the employer provided Chick with light-duty work suitable for Chick's restrictions. (Chick remained on restrictions until May 2012 when his neurosurgeon medically released him.) However, in January 2012, the employer relocated to Oklahoma City. It offered Chick a job there, but there was no proof presented that the employer would provide Chick with similar, light-duty work in Oklahoma. In fact, the testimony was that the employer did not know if the work was suitably restricted.

There is no dispute that Chick was within his healing period between January 2012 and May 2012. Chick also could not earn similar wages because his employer left town and failed to provide him with light-duty work per his restrictions. Employer asserts that Chick really refused the job because he did not want to move his family. The Commission acknowledged that Chick did not want to move. Yet it also found that his

SLIP OPINION

healing period continued, that work restrictions remained in place, and that the employer did not show the work offered was suitably restricted. These findings constitute substantial evidence to support the Commission's award of TTD benefits.

Affirmed.

HARRISON and GRUBER, JJ., agree.

*Worley, Wood & Parrish, P.A.*, by: *Melissa Wood*, for appellants.

*Walker, Shock & Harp, PLLC*, by: *Eddie H. Walker, Jr.*, for appellee.