STUCCO, INC. *v.* Donald ROSE and Second Injury Fund

CA 94-1283                                             914 S.W.2d 767

Court of Appeals of Arkansas
En Banc
Opinion delivered February 7, 1996

*Shaw, Ledbetter, Hornberger, Cogbill & Arnold*, by: *James A. Arnold II* and *E. Diane Graham*, for appellant.

*Lawrence W. Fitting, P.A.*, for appellee Donald Rose.

*Terry Pence*, for appellee Second Injury Fund.

BRUCE T. BULLION, Special Judge. The claimant in this workers' compensation case, Donald Rose, sustained a work-related injury on June 26, 1990, that resulted in an anatomical impairment of thirteen percent to the body as a whole. As a result of the combined effects of this compensable injury and a preexisting disability or impairment, the claimant was rendered permanently totally disabled. The appellant accepted the claim as compensable, as did the Second Injury Fund, but a dispute arose concerning the rate at which the claimant's thirteen percent should be paid, i.e., whether the permanent disability for the first 58.5 weeks (corresponding to the thirteen percent anatomical rating) should be paid at the permanent partial disability rate of $169.59 or at the permanent total disability rate of $226.11. The appellant took the position that, as employer, it was responsible only for paying the first 58.5 weeks at the permanent partial disability rate, and that the Second Injury Fund was liable not only for all payments beyond the 58.5-week period, but also for the difference between the permanent partial disability rate and the permanent total rate during the 58.5-week period the employer was responsible for paying weekly benefits attributable to the thirteen percent anatomical impairment rating. The Commission held that the appellant employer must pay at the permanent total amount for the 58.5-week period attributable to the thirteen percent rating, and that the Second Injury Fund's liability did not begin until the 58.5 weeks is paid out. In addition, the Commission found that the Second Injury Fund did not controvert its liability for permanent total disability benefits. From that decision, comes this appeal.

For reversal, the appellant contends that the Commission erred in holding it responsible for the difference between the claimant's permanent total and permanent partial disability rates, and that the Commission therefore also erred in awarding attorney's fees based on the appellant's controversion of that amount. On cross-appeal, the claimant contends that the Commission erred in finding that the Second Injury Fund did not controvert its liability for permanent total disability benefits. We affirm in all respects.

We first address the appellant's contention that the Commission erred in finding it liable for paying benefits for a period attributable to the thirteen percent anatomical impairment rating

at the permanent total rate, rather than at the permanent partial rate. The appellant's argument is based on its reading of Ark. Code Ann. § 11-9-525 (1987), which in pertinent part provides that:

> (a)(1) The Second Injury Trust Fund established in this chapter is a special fund designed to insure that an employer employing a handicapped worker will not, in the event the worker suffers an injury on the job, be held liable for a greater disability or impairment than actually occurred while the worker was in his employment.

> (2) The employee is to be fully protected in that the Second Injury Fund pays the worker the difference between the employer's liability and the balance of his disability or impairment which results from all disabilities or impairments combined.

> . . .

> (b)(3) If any employee who has a permanent partial disability or impairment, whether from compensable injury or otherwise, receives a subsequent compensable injury resulting in additional permanent partial disability or impairment so that the degree or percentage of disability or impairment caused by the combined disabilities or impairments is greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of combined disabilities or impairments, then the employer at the time of the last injury shall be liable only for the degree or percentage of disability or impairment which would have resulted from the last injury had there been no preexisting disability or impairment.

> . . .

> (b)(5) If the previous disability or impairment whether from compensable injury or otherwise, and the last injury together result in permanent total disability, the employer at the time of the last injury shall be liable only for the actual anatomical impairment resulting from the last injury considered alone and of itself. However, if the compensation for which the employer at the time of the last

injury is liable is less than the compensation provided in 11-9-501 - 11-9-506 for permanent total disability, then, in addition to the compensation for which the employer is liable and after the completion of payment of compensation by the employer, the employee shall be paid the remainder of the compensation that would be due for permanent total disability under 11-9-501 - 11-9-506 out of the Second Injury Trust Fund.

The question presented in the case at bar is one of first impression. The appellant contends that the statutory language recited above is unambiguous and clearly provides that an employer should pay only at the permanent partial rate, arguing that a contrary construction would result in the employer being held liable for a percentage of the employee's total disability. We do not agree that the statute is unambiguous in this regard. Although it does clearly provide that the employer will be liable for the actual anatomical impairment resulting from the last injury, the issue in the case at bar is not what percentage of the claimant's disability is to be paid by the employer, but is instead the rate at which that percentage is to be paid. As the appellant concedes in his brief, the statute is silent on the question of the rate to be paid.

Furthermore, we think that limitation of an employer's liability to the permanent partial rate is inconsistent with the general statutory scheme concerning payment of benefits where Second Injury Fund liability is involved. The statute explicitly provides that the employee is to be "fully protected," and we view this language as requiring that an employee who is rendered permanently totally disabled should receive benefits at the permanent total rate. Were the employer to pay at the permanent partial rate, "full protection" of the injured employee could be accomplished only through co-payments by the Second Injury Fund during the period of the employer's liability, or additional payments by the Fund during the Fund's period of liability. However, the statute makes no provision for co-payments by the Fund during the period of the employer's liability, but instead expressly provides that payments by the Fund are to begin only "after the completion of payment of compensation by the employer." Ark. Code Ann. § 11-9-525(b)(5). Moreover, additional payments by the Fund during the Fund's period of

liability would run afoul of the statutory maximum limits imposed on compensation payments. *See generally*, Ark. Code Ann. § 11-9-501 (Supp. 1993). Finally, we must, in construing statutes relating to the Second Injury Fund, interpret them strictly in light of the limited and restricted nature of the Fund and the need to ensure its solvency. *Second Injury Fund* v. *Riceland Foods, Inc.*, 17 Ark. App. 104, 704 S.W.2d 635 (1986). Given these considerations, we hold that the Commission did not err in concluding that the employer was required under Ark. Code Ann. § 11-9-525 to pay at the permanent total rate for the period attributable to the degree of anatomical impairment resulting from the last injury.

The appellant next contends that the Commission erred in awarding attorney's fees based on the appellant's controversion of the difference between the claimant's permanent partial disability rate and his permanent total disability rate. Insofar as this issue was contingent on the success of the appellant's initial argument, we need not address it.

On cross-appeal, the claimant contends that the Commission erred in finding that the Second Injury Fund did not controvert his entitlement to permanent total disability benefits. We do not agree. Whether or not a claim is controverted is a question of fact for the Commission to resolve, and its finding on this issue will not be reversed unless there is no substantial evidence to support it or it is clear that there has been a gross abuse of discretion. *New Hampshire Insurance Co.* v. *Logan*, 13 Ark. App. 116, 680 S.W.2d 720 (1984). In the case at bar, as the Commission noted, a relatively short time elapsed before the Fund admitted liability and its responsibility to pay permanent total disability benefits after the 58.5 weeks attributable to the employer's thirteen percent were paid. The mere fact that the Fund engages in investigation prior to admitting liability on a claim does not require a finding of controversion and, on this record, we cannot say the Commission erred in finding that the Fund had not controverted the claim. *See Buckner* v. *Sparks Regional Center*, 32 Ark. App. 5, 794 S.W.2d 623 (1990).

Affirmed on appeal, affirmed on cross-appeal.

JENNINGS, C.J., agrees.

MAYFIELD, J., concurs.

PITTMAN, ROBBINS and ROGERS, JJ., dissent.

MELVIN MAYFIELD, Judge, concurring. The parties in this case agree that the employee was injured on June 26, 1990; that he had a pre-existing disability or impairment at the time of the injury; and that the pre-existing disability or impairment when combined with the disability or impairment resulting from the injury of June 26, 1990, rendered the employee totally and permanently disabled.

It was stipulated that the injured employee's compensation rate for permanent total disability was $226.11 per week and $169.59 per week for permanent partial disability. The difference in this weekly rate is caused by the provision in Ark. Code Ann. § 11-9-501(d)(1) (1987) which provides that if an employee's total disability rate for an injury would be $205.35 per week or greater, then the maximum permanent partial disability will be 75 percent of the total disability rate. Thus, 75 percent of $226.11 is $169.59. It was also stipulated that the employee's injury of June 26, 1990, resulted in a 13 percent anatomical disability to the body as a whole. Therefore, under Ark. Code Ann. § 11-9-522(a) (1987), the 13 percent disability would be apportioned to the 450 weeks fixed by the statute as the value of the body as a whole, and the compensation for this permanent partial disability would be paid by the employer for 58.5 weeks.

However, because the employee had a pre-existing disability or impairment which, when combined with the disability caused by the injury of June 26, 1990, produced a greater disability than would have resulted form the June 1990 injury alone, the Second Injury Fund is liable for all the disability in excess of the 13 percent anatomical disability caused by the June 1990 injury.

But there is a question as to whether the employer at the time of the June 1990 injury should pay compensation for the 58.5 weeks at the $226.11 weekly rate or whether it should pay only $169.59 per week for that period with the Second Injury Fund paying the difference between that amount and the $226.11 to which the employee is entitled from and after his

injury of June 26, 1990.

I concur in the majority opinion in this case and write only to record my specific disagreement with any inference in the dissenting opinion that the vote of the majority to affirm the Commission was based solely upon our concern for the "solvency of the Second Injury Fund."

While that is not the issue in this case, and neither the Commission nor the majority opinion is grounded on that premise, the point is properly considered in construing the statutory liability of the Second Injury Fund. In the case of *Second Injury Fund* v. *McCarver*, 17 Ark. App. 101, 704 S.W.2d 639 (1986), this court pointed out that in *Arkansas Worker's Compensation Commission* v. *Sandy*, 217 Ark. 821, 233 S.W.2d 382 (1950), the Arkansas Supreme Court said that the solvency of the Second Injury Fund requires that the statutory provisions concerning its liability be strictly complied with. We also pointed out that Ark. Stat. Ann. § 81-1348(a) (Supp. 1985), now Ark. Code Ann. § 11-9-301(f) (Supp. 1995), provides that if after July 1, 1983, the balance in the Fund becomes insufficient to meet its obligations, payments shall be suspended until the Fund is able to meet those obligations and, in no event shall there be a reverter of responsibility to the employer or carrier.

In *Mid-State Construction Co.* v. *Second Injury Fund*, 295 Ark. 1, 8, 746 S.W.2d 539, 543 (1988), the Arkansas Supreme Court pointed out that it had affirmed our *McCarver* case, which had explained the *Sandy* case, and our supreme court said, "we recognize that it has previously been emphasized that the Second Injury Fund is a limited and restricted fund and that the statute is to be strictly complied with, lest the Fund be exposed to liability in every workers' compensation case."

I also point out that the Commission in the present case noted that we have said that the purpose of the Second Injury Fund is not to provide a "windfall" to those employers who hire handicapped people. *See Second Injury Fund* v. *Coleman*, 16 Ark. App. 188, 699 S.W.2d 401 (1985).

The majority opinion in the present case very clearly and logically reaches a conclusion that affirms the Commission, and I agree with it. However, because of the continuous effort that is

made to expose the Second Injury Fund to liability far beyond, in my opinion, its intended and beneficial purpose, I do not want the above points to be overlooked.

JUDITH ROGERS, Judge, dissenting. I respectfully dissent from the opinion of the court that under Ark. Code Ann. § 11-9-525 an employer is required to pay permanent partial anatomical impairment benefits at a permanent total rate.

Arkansas Code Annotated § 11-9-525 provides in part:

(a)(1) The Second Injury Trust Fund established in this chapter is a special fund designed to insure that an employer employing a handicapped worker *will not*, in the event the worker suffers an injury on the job, *be held liable for a greater disability or impairment than actually occurred while the worker was in his employment.*

(2) The *employee is to be fully protected* in that the *Second Injury Fund pays the worker the difference between the employer's liability and the balance of his disability or impairment which results from all disabilities or impairments combined.*

. . .

(b)(5) If the previous disability or impairment, whether from compensable injury or otherwise, and the last injury together result in *permanent total disability*, the employer at the time of the last injury *shall be liable only for the actual anatomical impairment resulting from the last injury considered alone and of itself.* However, if the compensation for which the employer at the time of the last injury is liable is less than the compensation provided in §§ 11-9-501 - 11-9-506 *for permanent total disability*, then, in addition to the compensation for which the employer is liable and after the completion of payment of compensation by the employer, the *employee shall be paid the remainder of the compensation that would be due for permanent total disability under §§ 11-9-501 - 11-9-506 out of the Second Injury Trust Fund.* (Emphasis added.)

Arkansas Code Annotated § 11-9-501 provides for the payment of permanent total disability benefits and sets the maxi-

mums for those payments. It also provides that "[c]ompensation payable to an injured employee for permanent partial disability, including scheduled permanent injuries *(the permanent partial disability rate)*, which results from an injury" shall not exceed sixty-six and two-thirds percent of the employee's average weekly wage.

The first step in interpreting a statute is to construe it just as it reads by giving words their ordinary and usually accepted meaning. When interpreting an act, it is permissible to examine its title; parts of statutes relating to the same subject matter must be read in the light of each other. *Farnsworth* v. *White County*, 39 Ark. App. 98, 839 S.W.2d 229 (1992). Also, in interpreting a statute and attempting to construe legislative intent, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, legislative history, and other appropriate matters that throw light on the matter. *Osmose Wood Preserving* v. *Jones*, 40 Ark. App. 190, 843 S.W.2d 875 (1992).

A clear reading of the statutes involved reveals that the employer shall not be held liable for a greater disability or impairment than actually occurred while the worker was in his employment. The opinion of the court, in disregard of the clear statutory language of Ark. Code Ann. § 11-9-525, has imposed liability on the employer for a greater degree of disability than was actually incurred by the employee by requiring the employer to pay permanent partial disability at a permanent total rate.

Although this is a case of first impression, the issue in this case is addressed by Ark. Code Ann. § 11-9-525(b)(5). That section provides that "if compensation for which the employer at the time of the last injury is liable is less than the compensation provided in [§ 11-9-501] for permanent total disability, then, in addition to the compensation for which the employer is liable and after the completion of payment of compensation by the employer, the employee shall be paid the remainder of the compensation that would be due for permanent total disability under [§ 11-9-501] out of the Second Injury Trust Fund."

Here, the claimant was injured and sustained a 13% anatomical impairment while in the employment of appellant. After

the previous disability was combined with the last injury, it was established that the claimant was totally disabled. Appellant paid the 13% anatomical impairment rating at a permanent partial rate of $169.59 for 58.5 weeks as required. Under a fair reading of these statutes that is the full extent of the appellant's liability. The employee was entitled to permanent total disability benefits for those 58.5 weeks; however, as the statute requires, appellant was only liable for permanent partial disability benefits. In this situation, the employer was liable for less than what the employee was entitled to receive under § 11-9-501 for permanent total disability. Therefore, as the statute clearly reads, the employee shall be paid the remainder of the compensation that would be due for permanent total disability under § 11-9-501 out of the Second Injury Trust Fund.

The opinion of the court states that "limitation of an employer's liability to the permanent partial rate is inconsistent with the general statutory scheme concerning payment of benefits where Second Injury Fund liability is involved." I disagree.

The limitation of an employer's liability to the permanent partial rate is in keeping with the general statutory scheme and more specifically with the particular statute in question. The statute involved specifically limits the employer's liability and in the same breath protects the employee through the Second Injury Fund.

In interpreting statutes we are to give words their plain and ordinary meaning, and the decision reached by the court is a departure from the unambiguous language of Ark. Code Ann. § 11-9-525. The court's decision imposes liability upon the employer that the Arkansas General Assembly did not intend an employer of a previously injured worker to bear by requiring that employer, who is only responsible for paying the permanent partial disability benefits attributable to the worker's injury while in its service, to pay for *permanent total disability*. This result will neither protect injured workers from being denied employment by willing employers, nor will it insure those employers that their commendable efforts to provide work for previously-injured workers will not be penalized in the event of a subsequent injury. The language of the statute explicitly states that the Second Injury Fund is established to *"insure that an*

*employer employing a handicapped worker will not, in the event the worker suffers an injury on the job, be held liable for a greater disability or impairment than actually occurred while the worker was in his employment . . . ."*

Contrary to the suggestion by those who voted to affirm the Commission, the crucial concern of the legislation is to protect injured workers and their employers from economic hardship through job discrimination and increased exposure to the financial consequences of subsequent injuries, respectively. If the solvency of the Second Injury Fund is to become the paramount aim to be served by this legislation, one would think that the General Assembly is both able and willing to say so, and to do it in vastly different language from that found in the statute before us. This court should decline the invitation to reach a result different from that dictated by the plain language of the statute which places concern for injured workers and the businesses that employ them above concerns about the solvency of a Fund created to protect those very persons.

I have also re-examined the statute and the cases cited by the concurring opinion. I do not find that the cases cited by that opinion establish a public policy to protect the Second Injury Fund at the expense of the injured worker.

ROBBINS and PITTMAN, JJ., join in this opinion.