Russell LEE *v.* ALCOA EXTRUSION, INC.,
Ace Property & Casualty Ins. Co., Second Injury Fund

CA 04-591                                        201 S.W.3d 449

Court of Appeals of Arkansas
Opinion delivered January 26, 2005

Compton, Prewett, Thomas & Hickey, L.L.P., by: F. Mattison Thomas III, for appellant.

Terry Pence, for appellee.

TERRY CRABTREE, Judge. In this workers' compensation case, the Commission affirmed an administrative law judge's award to the appellant, Russell Lee, for wage-loss disability in the amount of twenty-five percent. However, the Commission reversed the ALJ's finding that appellant had been rendered permanently and totally disabled. The Commission agreed with the ALJ that the Second Injury Fund had controverted appellant's entitlement to wage-loss disability, including the twenty-five percent award. On appeal, appellant claims that substantial evidence does not support the Commission's conclusion that he failed to prove entitlement to permanent and total disability benefits. On cross-appeal, the Second Injury Fund contends that the Commission erred in finding that it controverted appellant's entitlement to wage-loss disability benefits. We affirm.

Appellant was born on May 26, 1958. After graduating from high school, he secured employment at Alan White Furniture Company in Stamps, Arkansas, where he worked on an assembly line from 1976 to 1977. On April 29, 1977, appellant began working for Howmet, the predecessor to Alcoa. Alcoa manufactures stadium seats, shower doors, and scaffold boards. Appellant testified that he started working for Howmet as a "puller" but advanced to the maintenance department. On August 7, 2001,

appellant sustained an admittedly compensable injury to his back while working for Alcoa, for which he underwent surgery on August 29, 2001. Appellant returned to work on light duty after his surgery. However, appellant claimed that he was unable to perform the assigned job duties due to his injury. Appellant has not worked again since that time.

During the course of his employment with Alcoa, appellant suffered at least two injuries to his back prior to August 2001. Appellant testified that in 1990 he and two other employees were working in a hole tightening bolts when he was injured. At that time, appellant was bent over pulling on a wrench when he experienced severe pain in his low back. Appellant reported the injury to his supervisor and was ultimately treated by Dr. Walker. Dr. Walker referred appellant to Dr. Warren Long, an orthopedic physician, and appellant underwent a myelogram. Later, Dr. Long discharged appellant to return to work.

Appellant returned to work for Alcoa and performed his regular job duties in the maintenance department. In December 1994, appellant suffered another injury to his back while working for Alcoa. As a result, the company doctor, who was also appellant's family physician, Dr. Pullig, treated appellant. In addition, appellant sought treatment from Dr. Wilber Giles, a Little Rock neurosurgeon. Dr. Giles admitted appellant to the hospital and performed a CT scan and a myelogram. Ultimately, appellant was released to return to his regular work duties. Appellant stated that he did not experience any residual effects from his 1994 injury upon returning to work.

On August 7, 2001, while assisting a co-worker, appellant sustained an injury to his low back while moving a bath enclosure. Appellant reported the injury to his supervisor, David McWilliams. Appellant attempted to return to his regular job duties that day but was unable to complete them. Dr. Patrick Antoon, Alcoa's new company doctor, treated appellant for his complaints resulting from the August 7, 2001, injury. Dr. Antoon referred appellant to Dr. Robert Germann, an El Dorado neurosurgeon. Dr. Germann ordered an MRI and noted that it reflected a very large herniated disc at the L4-5 on the left. As a result, Dr. Germann performed surgery on appellant on August 29, 2001, in the form of a left L4-5 intra-laminar laminotomy with removal of a herniated disc. Appellant testified that, following the surgery, his pain decreased by a small amount. Thereafter, Dr. Germann referred appellant to a physical therapist. Appellant stated that the physical therapy made

his pain worse. A December 10, 2001, report from Dr. Germann noted that appellant was undergoing work-conditioning treatments three times per week followed by a functional-capacity evaluation. During the time appellant received treatment from Dr. Germann, appellant also continued to receive treatment from Dr. Antoon.

Appellant testified that he continued to treat with Dr. Antoon because he was the company doctor and because Dr. Antoon had not released him to go back to work. Dr. Antoon prescribed several medications to appellant. However, appellant stated that while the medicine helped control some of his pain, it did not completely alleviate it.

Appellant testified that he is extremely restricted in his physical capacity because of the severe pain he experiences in his low back, attributable to the August 7, 2001, compensable injury. Appellant noted that he alternates between standing and sitting; however, he finds that he does better when he has an opportunity to lie down. Appellant estimates that he can walk approximately twenty feet before having to stop, stand straight, and rest.

For less than two weeks, appellant returned to light-duty work at Alcoa working at a conveyor belt. He stated that he had to quit because while he was sitting by the assembly line he was required to twist his body to complete his task. While working on the assembly line, appellant had an onset of back pain and "passed out."

In a report dated February 12, 2002, Dr. Germann opined that appellant had reached maximum medical improvement with a ten percent permanent physical impairment to the body as a whole. Appellant had previously been assessed with a seven percent impairment to the body as a whole by Dr. Carl Goodman relative to the 1994 injury. Dr. Germann noted that appellant's ten percent impairment included the seven percent previously assessed by Dr. Goodman.

Alcoa acknowledged the three percent permanent impairment resulting from appellant's August 7, 2001, injury and paid appropriate benefits. Appellant asserted that as a result of the compensable injury he incurred a loss of earning capacity or wage loss in excess of the anatomical impairment. Appellant filed a worker's compensation claim seeking wage loss disability benefits. Alcoa joined the Second Injury Fund in the claim asserting that any loss of earning capacity suffered by appellant from the August 2001 injury should be the responsibility of the Second Injury Fund.

The Second Injury Fund completed discovery in this matter by taking the deposition of Dr. Antoon. Sometime after the deposition, the Fund acknowledged liability for wage-loss benefits in the amount of twenty-five percent to the body as a whole. Ultimately, the Fund presented appellant with a check representing the twenty-five percent wage-loss benefits at the hearing before the ALJ. The Second Injury Fund denies that it controverted wage-loss benefits in this claim and denies that any attorney's fee was owed to appellant's attorney.

On appeal, appellant claims that substantial evidence does not support the Commission's conclusion that he failed to prove entitlement to permanent and total disability benefits. Appellant asserts that he had been rendered permanently and totally disabled as a result of the August 7, 2001, compensable injury. We recognize that Alcoa acknowledged liability for medical and permanent disability benefits to correspond with a three percent anatomical impairment from the August 2001 injury.

In reviewing decisions from the Workers' Compensation Commission, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Carman v. Haworth, Inc.*, 74 Ark. App. 55, 45 S.W.3d 408 (2001). Substantial evidence exists if reasonable minds could reach the same conclusion. *Daniels v. Arkansas Dep't Human Servs.*, 77 Ark. App. 99, 72 S.W.3d 128 (2002); *Lee v. Dr. Pepper Bottling Co.*, 74 Ark. App. 43, 47 S.W.3d 263 (2001). When a claim is denied because the claimant has failed to show an entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Whitlatch v. Southland Land & Development*, 84 Ark. App. 399, 127 S.W.3d 486 (2004).

At the time of the hearing, appellant was forty-five years old. Appellant had obtained a high-school education. Appellant sustained an injury to a portion of his body that is not scheduled under workers' compensation laws. Therefore, appellant's entitlement to permanent disability benefits is controlled by Ark. Code Ann. § 11-9-522 (Repl. 2002), which states in pertinent part:

(b)(1) In considering claims for permanent partial disability benefits in excess of the employee's percentage of permanent physical impairment, the Workers' Compensation Commission may take

into account, in addition to the percentage of permanent physical impairment, such factors as the employee's age, education, work experience, and other matters reasonably expected to affect his or her future earning capacity.

Pursuant to this statute, when a claimant has been assigned an anatomical impairment rating to the body as a whole, the Commission has the authority to increase the disability rating, and it can find a claimant totally and permanently disabled based upon wage-loss factors. *Wal-Mart Stores, Inc. v. Connell*, 340 Ark. 475, 10 S.W.3d 727 (2000). The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Emerson Electric v. Gaston*, 75 Ark. App. 232, 58 S.W.3d 848 (2001). The Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other matters affecting wage loss, such as the claimant's age, education, and work experience. *Eckhardt v. Wills Shaw Express, Inc.*, 62 Ark. App. 224, 970 S.W.2d 316 (1998). In considering factors that may affect an employee's future earning capacity, the court considers the claimant's motivation to return to work, since a lack of interest or a negative attitude impedes our assessment of the claimant's loss of earning capacity. *Ellison v. Therma Tru*, 71 Ark. App. 410, 30 S.W.3d 769 (2000).

Here, the Commission found that appellant failed to prove that he was permanently and totally disabled. The Commission noted that appellant was forty-five years old and was educated through the twelfth grade. Appellant's primary work history was with Alcoa, which included industrial and manual labor. Appellant testified that he sustained workplace injuries in 1990 and 1994, which did not require surgery.

The parties stipulated to the fact that appellant sustained a compensable injury to his back in August 2001. Dr. Germann subsequently performed surgery at L4-5, but appellant testified that neither the surgery or the physical therapy relieved his pain. Dr. Germann assigned temporary work restrictions, pursuant to a functional capacity evaluation in December 2001. Dr. Germann stated in January 2002, "I feel that he could continue to work but a sitting job would be better." Dr. Germann, the treating neurological surgeon, did not opine that appellant was permanently and totally disabled. Instead, in February 2002 Dr. Germann assigned only a ten percent physical impairment rating, with three percent attributable to the 2001 injury. However, by sharp contrast, Dr.

Antoon stated in November 2002 that appellant had "not recovered from his lumbar disc surgery."

The Commission is entitled to review the basis for a doctor's opinion in deciding the weight and credibility of the opinion. *Maverick Transp. v. Buzzard*, 69 Ark. App. 128, 10 S.W.3d 467 (2000). The Commission stated that Dr. Antoon's opinion that appellant had not recovered from surgery was entitled to minimal weight when compared to Dr. Germann's assessment that appellant had reached maximum medical improvement in February 2002. We recognize that Dr. Antoon, a family practitioner, opined in November 2002, that appellant was "100 percent disabled." Dr. Antoon testified at deposition that his opinion was based on appellant's pain and what the doctor described as "objective" findings, which included a range of motion test. In its written opinion, the Commission discredited Dr. Antoon's medical opinion on several levels. For instance, the Commission gave little weight to Dr. Antoon's statement that appellant "cannot withstand a [functional capacity evaluation]." Yet, the record indicates that appellant had previously undergone a functional capacity evaluation.

The Commission also found that appellant lacked motivation to return to work. The Commission noted appellant's admission at the hearing that he had been physically able to participate in an extended camping trip. Furthermore, the Commission found that the opinion of Bob White, appellant's vocational specialist, failed to demonstrate that appellant was permanently and totally disabled. Ultimately, the Commission ruled that appellant proved that he was entitled to wage loss disability of twenty-five percent in excess of his ten percent anatomical impairment. The Commission based its finding on the fact that appellant is relatively young, has a high-school education, and has a varied work history. The Commission noted that Dr. Germann's opinion, that appellant was able to return to at least restricted work duties, was worthy of great weight.

In spite of the opinion of Dr. Antoon, the Commission concluded that appellant was not totally and permanently disabled. Rather, the Commission relied upon Dr. Germann's medical opinion in reaching its conclusion that appellant suffered wage-loss disability only in the amount of twenty-five percent. When the Commission chooses to accept the testimony of one physician over another, in such cases, we are powerless to reverse that decision. *Ellison v. Therma Tru*, 71 Ark. App. 410, 30 S.W.3d 769

(2000). We note that the case at bar is distinguishable from *Whitlatch v. Southland Land & Development*, 84 Ark. App. 399, 141 S.W.3d 916 (2004). In that case, the two treating physicians shared similar medical opinions, and the Commission was not asked to decide between them. Here, the two treating physicians have competing medical opinions, and the Commission was asked to decide between them. We cannot say that the Commission lacked a substantial basis for choosing to accept Dr. Germann's opinion over Dr. Antoon's.

On cross appeal, the Second Injury Fund maintains that the Commission erred in finding that it controverted appellant's wage-loss disability benefits in excess of twenty-five percent. Arkansas Code Annotated section 11-9-715(a)(2)(B) (Repl. 2002) provides that whenever the Commission finds that a claim has been controverted, in whole or in part, the Commission shall direct that fees for legal services be paid to the claimant's attorney. One of the purposes of the attorney's fee statute is to put the economic burden of litigation on the party who makes litigation necessary. *Brass v. Weller*, 23 Ark. App. 193, 745 S.W.2d 647 (1998). Whether or not a particular claim is controverted is a question of fact for the Commission. *Aluminum Co. of America v. Henning*, 260 Ark. 699, 543 S.W.2d 480 (1976). The mere fact that a party investigates a claim prior to admitting liability does not require a finding of controversion. *Stucco, Inc. v. Rose*, 52 Ark. App. 42, 914 S.W.2d 767 (1996).

The Commission found that the Second Injury Fund controverted the payment of wage-loss benefits to appellant. However, the Second Injury Fund responds by stating that it "acknowledged its liability for wage loss benefits in the amount of twenty-five percent to the body as a whole four days after taking the evidentiary deposition of the appellant's treating physician and medical expert . . . . Following the deposition, the Fund promptly acknowledged its liability." The Second Injury Fund appears to argue that, after they deposed Dr. Antoon and learned his opinion that appellant was permanently and totally disabled, its voluntary decision to pay twenty-five percent wage loss did not constitute controversion.

Again, one of the purposes of the attorney's fee statute is to put the economic burden of litigation on the party who makes litigation necessary. *Brass, supra*. After Dr. Germann's assessment of an anatomical rating, appellant completed a pre-hearing question-

50naire in June 2002. Appellant listed as an issue for litigation the extent of his "wage loss." The Second Injury Fund stated in July 2002 that the issue of wage loss disability was not ripe. It told the ALJ that it was conducting discovery. The Commission noted that, in August 2002, the Second Injury Fund listed "for litigation" the "Extent of claimant's disability." A prehearing order from December 2002 stated that there would be a hearing on wage loss and permanent total disability. The record indicates that if appellant had not retained an attorney, he would not likely be receiving any award for wage loss disability. As a result, the Commission concluded that the Second Injury Fund controverted appellant's entitlement to wage loss disability, including the award of twenty-five percent. We agree and therefore affirm on cross appeal as well.

Affirmed.

GRIFFEN and VAUGHT, JJ., agree.