2012 Ark. App. 175

**Sheila MILTON, Appellant**

**v.**

**K–TOPS PLASTIC MFG. CO., Companion Property & Casualty, Second Injury Fund, And Death & Permanent Total Disability Trust Fund, Appellees.**

**No. CA 11–796.**

Court of Appeals of Arkansas.

Feb. 22, 2012.

*pline & Disability Commission v. Thompson,* 341 Ark. 253, 16 S.W.3d 212 (2000)).

Steven R. McNeely, Little Rock, for appellant.

David Barton Simmons, Little Rock, Emma Diane Graham and Rebecca D. Hattbaugh, Fort Smith, for appellee.

CLIFF HOOFMAN, Judge.

Appellant Sheila Milton appeals the decision of the Workers' Compensation Commission finding that she failed to prove that she was permanently and totally disabled and assigning twenty-five percent wage-loss disability. Appellee K–Tops Plastic Manufacturing Company (K–Tops) cross-appeals from the Commission's finding that the Second Injury Fund has no liability. We affirm on direct appeal and cross-appeal.

Milton sustained a back injury on May 5, 2006, when working for K–Tops. The compensability of her injury was the subject of previous litigation, which ended with the Commission's decision on July 8, 2009, finding that Milton had suffered a compensable back injury, was entitled to medical treatment and temporary total disability, and had sustained an anatomical impairment of twelve percent to the body as a whole. This decision was not appealed.

On October 8, 2010, a hearing was held before an administrative law judge (ALJ) to determine Milton's entitlement to permanent total disability benefits or wage-loss benefits and the liability of the Second Injury Fund. Milton was a forty-nine-year-old woman who had gone to school through the seventh or eighth grade and later obtained her GED. She had no further training or degrees. Milton worked for a shoe factory off and on for more than twenty years performing manual labor. In 2003, she worked for Wal–Mart for a short period of time stocking shelves and sustained a work-related injury. In January 2005, Dr. Harry Friedman performed back surgery related to this injury. Milton testified that she recovered completely from that injury and subsequently worked at Dollar General for a few months without restrictions, aside from using "common sense."

Milton began working for K–Tops in February 2006. On May 5, 2006, she twisted her back while pulling a cage container. She did not work after this date and ultimately had surgery in September 2006 performed by Dr. Sam Murrell. Dr. Murrell performed another surgery in March 2007. The parties stipulated that Milton reached maximum medical improvement and the end of her healing period on June 20, 2007. On that date, Dr.

Murrell released Milton to light-duty work with lifting of no more than twenty pounds. Milton continued to see Dr. Murrell for follow-up visits and refills of her prescriptions until March 2008. After that, Milton regularly saw a family medicine doctor, Dr. James Franks.

Milton testified that since her March 2007 surgery, her back pain had worsened. She testified that her back pain was constant and that she could not do the things she used to do, including fish, hike, swim, camp, shop, cook, and watch her grandson play sports. She said that walking caused her legs to spasm and the farthest distance she walked was about 100 yards to her mailbox. She testified that she could not shop at Wal–Mart or wash dishes for more than ten minutes without her back "acting up" and requiring her to lie down. She said that she would fall if she was on her feet for very long and that she had previously hit her shoulder and head upon falling, which made her scared to walk. She limited her driving because she was afraid her leg spasms would affect her driving. She said that the heaviest thing she lifts is her pillow and that she has problems getting in and out of the bathtub. Milton had been in two car accidents since her injury, but she said that they did not affect the condition of her back. Milton said that she lies flat on her back in bed or on her couch for seven hours a day. She has not worked anywhere since her injury. She said she wanted to work but her back would not let her, and she has not tried looking for a job because she did not think anyone would hire a person in her shape. Milton said that she took numerous pain medications and had experienced side effects, including loss of memory, dizziness, inability to concentrate, and nausea. Milton's husband, Rodney Milton, corroborated her testimony that she recovered from her 2005 surgery but has had problems since the May 2006 injury.

The ALJ found that Milton was permanently and totally disabled and that the Second Injury Fund had no liability. K–Tops appealed to the Commission, which reversed the ALJ's finding that Milton proved she was permanently totally disabled. The Commission found that she was entitled to wage-loss disability in the amount of twenty-five percent. The Commission affirmed the finding that the Second Injury Fund was not liable. Milton now appeals the findings that she was not permanently totally disabled and was not entitled to more than twenty-five percent wage loss. K–Tops brings a cross-appeal, arguing that it was error to find that the Fund was not liable.

In appeals involving claims for workers' compensation, we view the evidence in the light most favorable to the Commission's decision and affirm the decision if it is supported by substantial evidence. *Leach v. Cooper Tire & Rubber Co.*, 2011 Ark. App. 571, 2011 WL 4477865. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm. *Id.*

Milton argues that she is no longer able to work and is entitled to permanent and total disability benefits. Pursuant to Arkansas Code Annotated section 11–9–519(e)(1) (Repl.2002), "permanent total disability means inability, because of compensable injury or occupational disease, to earn any meaningful wages in the same or other employment." The burden of proof is on the employee to prove inability to earn any meaningful wages in the same or other employment. Ark.Code Ann. § 11–9–519(e)(2). Permanent total disability

shall be determined in accordance with the facts. Ark.Code Ann. § 11–9–519(c).

When a claimant has been assigned an anatomical impairment rating to the body as a whole, the Commission has the authority to increase the disability rating, and it can find a claimant totally and permanently disabled based upon wage-loss factors. *Lee v. Alcoa Extrusion, Inc.,* 89 Ark.App. 228, 201 S.W.3d 449 (2005). The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Id.* The Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other matters affecting wage loss, such as the claimant's age, education, and work experience. *Id.* In considering factors that may affect an employee's future earning capacity, the court considers the claimant's motivation to return to work, since a lack of interest or a negative attitude impedes our assessment of the claimant's loss of earning capacity. *Id.*

The Commission stated that it gave significant evidentiary weight to the opinion of Dr. Murrell that Milton was able to perform restricted work duties. The Commission also found that "there is no probative evidence of record corroborating the claimant's testimony that she is physically required to remain supine for extended periods up to seven hours daily." Furthermore, the Commission found that Milton was not motivated to find appropriate gainful employment within her permanent physical restrictions.

Milton argues that the Commission erred in finding that she could work based on Dr. Murrell's June 20, 2007 report because Dr. Murrell later said in his deposition that he would defer to a functional capacity evaluation (FCE) to determine her physical limitations. She argues that the Commission's emphasis on this report is speculation and conjecture because an FCE was never conducted. Milton contends that if she is not found to be permanently and totally disabled, she is entitled to a sizable wage loss of more than the twenty-five percent the Commission awarded. Milton claims that this case is similar to *Whitlach v. Southland Land and Development,* 84 Ark.App. 399, 141 S.W.3d 916 (2004), where this court reversed the Commission and held that the appellant was entitled to permanent total disability benefits. Although Whitlach's description of his condition was similar to Milton's testimony, in that case a doctor opined that Whitlach was permanently and totally disabled and a vocational expert found that he was unable to perform sedentary work. As K–Tops argues, no physician has indicated that Milton is permanently and totally disabled from working, and Dr. Murrell released her to return to restricted duty or sedentary employment.

Although Dr. Franks submitted a letter, dated February 22, 2010, reporting that Milton stated the side effects of her medications made her unable to work, K–Tops argues that Dr. Franks was merely restating Milton's own estimation of her ability to work. K–Tops also notes that, despite her statements to Dr. Franks, Milton testified at her deposition that those same medications did not affect her ability to think clearly. The Commission stated that it gave minimal weight to Dr. Franks's letter. K–Tops also argues that Milton's testimony is not credible because there was no corroboration of her ability to perform only limited activities and no medical findings that would restrict her to lying flat on her back for seven hours a day. Furthermore, K–Tops notes differences between Milton's deposition testimony and hearing testimony regarding her abilities to drive, walk, and work at a sit-down job. In her deposition taken January 21, 2010,

Milton testified that she wanted to try to work at a sedentary job, that she was walking up to three blocks a day, and that she was lying on her back for four hours a day.

In light of Milton's scarce attempts to return to work, her changing testimony regarding her abilities, and the lack of any opinion by a medical or vocational expert that she was unable to work, we hold that the Commission's decision was supported by substantial evidence and affirm.

We now address K–Tops's argument on cross-appeal that the Commission's finding that the Second Injury Fund had no liability was not supported by substantial evidence. The Second Injury Fund is "designed to ensure that an employer employing a worker with a disability will not, in the event that the worker suffers an injury on the job, be held liable for a greater disability or impairment than actually occurred while the worker was in his or her employment." *St. Vincent Health Servs., Inc. v. Bishop,* 2010 Ark. App. 141, 2010 WL 475315 (citing Ark. Code Ann. § 11–9–525(a)(1)). For the Fund to be liable, three hurdles must be met: 1) the employee must have suffered a compensable injury at his current place of employment; 2) prior to that injury, the employee must have had a permanent partial disability or impairment; and 3) the disability or impairment must have combined with the recent compensable injury to produce the current disability status. *R.C. Landscaping v. Jones,* 2010 Ark. App. 304, 374 S.W.3d 761. Here, the Commission found that "[e]ven if the claimant had a prior disability or impairment before the May 5, 2006 compensable injury, the evidence does not demonstrate that the disability or impairment combined with the recent compensable injury to produce the current disability status."

K–Tops argues that the medical records and Dr. Murrell's unrefuted deposition testimony establish that Milton's 2003 injury combined with the recent compensable injury to produce the current disability status. Although Dr. Murrell testified that scar tissue formed after Milton's previous surgery could have contributed to her symptoms, he testified that he could not determine within a reasonable degree of medical certainty whether her scar tissue or a recurrent herniation was causing her complaints and symptoms. He stated only that an argument could be made that there was a relationship between her continued treatment and the previous surgery. Milton testified that she completely recovered from her 2003 injury and that she attributed all of her pain and disability to the 2006 injury. Her husband corroborated these assertions. Dr. Murrell testified that even if Milton had not had the 2005 surgery, he would have assigned the same impairment rating for the procedures and treatment subsequent to the 2006 injury. We hold that there is substantial evidence to support the Commission's finding and affirm on cross-appeal.

Affirmed.

HART and BROWN, JJ., agree.