2012 Ark. App. 548

**Alan J. EFIRD, Appellant,**

**v.**

**WHELAN SECURITY, INC.; American Home Assurance Co.; and Death and Permanent Total Disability Trust Fund, Appellees.**

**No. CA 12–392.**

Court of Appeals of Arkansas.

Oct. 3, 2012.

Rehearing Denied Nov. 14, 2012.

Philip M. Wilson, Little Rock, for appellant.

Worley, Wood & Parrish, P.A., by: Jarrod S. Parrish, Little Rock, for appellees.

ROBIN F. WYNNE, Judge.

Alan J. Efird appeals from the Arkansas Workers' Compensation Commission's decision finding that his colon condition was not related to his admittedly compensable cervical spine injury; that he was entitled to a twelve-percent impairment rating for his compensable injury; and that he was entitled to twenty-four-percent wage-loss disability. His employer, Whelan Security, Inc., cross-appeals arguing that Efird failed to prove entitlement to wage-loss disability benefits. We affirm on both direct appeal and cross-appeal.

Efird, who was sixty years old at the time of the hearing and had a twelfth grade education, began working for Whelan Security in September 2007 as a part-time night security guard. On January 7, 2008, he fell and suffered a compensable cervical spine injury; he continued to work for Whelan Security until July 7, 2008, after which he did not work. At the hearing before the administrative law judge (ALJ) on August 24, 2011, Efird testified regarding his past employment and extensive medical history. He stated that he worked as a truck driver in 1975 for one year before injuring his knee. He had knee surgery and eventually returned to

work doing construction. According to Efird, he was not able to "hold a job" in construction because of physical problems. He then worked as a guard for the Arkansas Department of Correction. Efird testified that in 1991 he was doing construction work when he injured his left wrist and shoulder, leading to a total shoulder replacement and a "fused" hand. Also before his injury at Whelan, Efird had hip surgery after falling and breaking his hip in his yard. In addition, Efird testified that he had spurs in his neck before his compensable injury in 2008.

When Efird began working as a security guard for Whelan in 2007, he was receiving social security disability benefits for his shoulder and hand problems. He testified that he informed his supervisors at Whelan of his disabilities, and they advised that he could sit in his truck for most of his shift; he was able to scare away would-be intruders with his shotgun. On January 7, 2008, while working as a night guard at a trucking company, he went into the warehouse and fell backwards, landing on his back on a forklift. According to Efird, he was unable to get up (after a period of paralysis, he was able to crawl to the office) and was found by an employee of the trucking company.

Efird was first treated in the emergency room at Baptist Health Medical Center, where x-rays of the lumbar spine showed no acute findings and he was sent home. Efird saw Dr. Michael Atta the following day. Dr. Atta's notes from that visit indicate that Efird reported mild discomfort to his right shoulder and mild mid-back pain; Dr. Atta assessed right shoulder and thoracic strains. Efird was prescribed Naprosyn and Soma, provided with a cane, and returned to work with restrictions and instructed to return in one week for further evaluation. On January 16, 2008, Dr. Atta assessed Efird with lumbar con-

tusion. After another appointment on January 23, 2008, Dr. Atta referred Efird for an MRI of his thoracolumbar spine and his right shoulder. The MRI of Efird's spine revealed mild spinal stenosis at T10–T11, spinal stenosis from L2–3 to L4–5, and no neural foramina narrowing. Efird returned to see Dr. Atta on February 4, 2008, continuing his complaints of numbness in both lower extremities, now radiating down to both feet, and persistent weakness in his right upper extremity. After reviewing the MRI results, Dr. Atta found that there were no objective findings that correlated with Efird's symptoms and released him back to regular work activities without restrictions.

Efird's family physician, Dr. Larry Brashears, referred him to a neurosurgeon, Dr. Richard Jordan, to determine whether he had a spinal cord injury and possibly a residual cervical disc injury. Efird saw Dr. Jordan on June 25, 2008, and complained of low back pain and right lower extremity numbness radiating to the foot. He also reported that he intermittently lost bowel control. Dr. Jordan noted a "spastic gait." A June 30, 2008 MRI of Efird's cervical spine showed "severe multilevel canal narrowing with at least moderately severe multilevel cord impingement. This is secondary to a combination of spondylosis and generalized multilevel disc bulging."

On September 19, 2008, Dr. Jordan performed a decompressive cervical laminectomy of C3 through C6. After the surgery, Efird received physical therapy. The surgery did improve Efird's preoperative complaints, but according to Dr. Jordan, the ongoing problems from the spinal cord injury included numbness in the extremities, weakness, and chronic pain. In a letter to Efird's attorney dated June 24, 2009, Dr. Jordan summarized three separate problems with Efird's spine: an old

lumbar injury; facet hypertrophy at the lower thoracic levels that had been treated with injections; and the cervical spine injury, ongoing problems from which include numbness in the extremities, weakness, and chronic pain.

Dr. Earl Peeples saw Efird for an independent medical evaluation on July 23, 2009. Dr. Peeples deferred to Dr. Jordan as to maximum medical improvement (MMI) and an impairment rating. He stated that the need for the decompressive laminectomy was directly related to Efird's fall at work.

Dr. Kenneth Rosenzweig also performed an independent medical evaluation. In his March 30, 2010 report, Dr. Rosenzweig noted that Efird was not recommended to be declared at MMI until two years after his surgery. He further noted that because of Efird's "profound" disability, he was unable to work even in a sedentary capacity. He suggested an impairment rating of forty percent to the whole person.

In August 2010, Efird saw Dr. Brashears due to abdominal pain and weakness; he had a distended abdomen and reported that his bowel had not been moving. Efird was admitted to the hospital, where he underwent gallbladder surgery. He was discharged on August 15, 2010, but continued to have abdominal problems and constipation. He was admitted to the hospital again on August 31, 2010, and was released two days later.

Efird next saw Dr. Budhraja, a gastroenterologist. Dr. Budhraja and Dr. Brashears were of the opinion that Efird suffered from "neurogenic colon due to spinal cord injury." On April 21, 2011, Efird had a subtotal colectomy. Efird testified that this surgery, which was performed by Dr. Marotti, helped him tremendously.

Efird testified that his "bowel movement problem" started on the night of his injury. As for his limitations after his fall at Whelan, Efird stated that he could no longer tie his own shoes or lift his grandchildren, and he could walk only about fifty yards without having to stop or sit down. He could no longer hunt. He walked with a cane but still sometimes fell down. Efird testified that he could still drive his vehicle and went to Wal–Mart daily.

At a hearing before an ALJ on August 29, 2009, the respondents agreed to accept the previously controverted care for Efird's cervical spine, including the surgery by Dr. Jordan, and to compensate him for accrued temporary total disability (TTD) benefits from July 8, 2008, to a date to be determined. A hearing was held on August 24, 2011, to litigate the following issues: the date Efird reached maximum medical improvement, either September 9, 2009, or September 9, 2010; his entitlement to TTD benefits from September 9, 2009, to September 9, 2010; his impairment rating; whether he is permanently and totally disabled or entitled to wage-loss disability benefits; additional medical treatment; and attorney's fees. The ALJ found that appellees were responsible for treatment Efird received for a neurogenic colon condition; that Efird had sustained a sixty-two-percent whole-body anatomical impairment; and that Efird failed to prove that he was permanently and totally disabled or entitled to wage-loss disability benefits as a result of his stipulated compensable cervical injury.

The Commission affirmed in part and reversed in part in an opinion filed March 30, 2012. The Commission found that Efird failed to prove that his neurogenic colon condition was causally related to his January 7, 2008 compensable injury. The Commission did not credit Efird's testimony that he began suffering from bowel

problems on the date of his injury, noting that Dr. Atta specifically noted a lack of any urinary or fecal incontinence in his treatment notes, Dr. Brashears did not note any bowel dysfunction on Efird's March 3, 2008 visit, and Dr. Peeples's report states that Efird was able to maintain bladder and bowel function. The Commission recognized that Dr. Jordan noted on August 18, 2008, that Efird intermittently lost bowel control; that Dr. Rosenzweig stated that he would consider including "bowel dysfunction" in calculating Efird's permanent impairment rating; and the opinion of Dr. Brashears that the colon condition was related to the fall and the notation purporting to show Dr. Budhraja's concurrence in that opinion. The Commission specifically found, however, that there was no evidence supporting Dr. Brashears's opinion and assigned little weight to it.

As for permanent anatomical impairment, the Commission found that Efird sustained a twelve-percent impairment for his cervical injury. The Commission affirmed the ALJ's finding that Efird failed to prove that he was permanently and totally disabled, pointing to his testimony that he was able to participate in daily activities, as well as his failure to attempt to work for any employer since July 2008. The Commission found that Efird was entitled to twenty-four percent wage-loss disability in excess of his permanent anatomical impairment. Efird filed a notice of appeal on April 12, 2012; appellees' notice of cross-appeal was filed on April 23, 2012.

Our standard of review in workers' compensation cases is well settled. In reviewing decisions from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Hickey v.*

*Gardisser Constr.,* 2009 Ark. App. 725, at 5, 377 S.W.3d 259, 263. Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Id.* Substantial evidence exists only if reasonable minds could have reached the same conclusion without resorting to speculation or conjecture. *Id.*

## I. Direct Appeal

### A. Compensability of Efird's Colon Condition

First, Efird argues that he proved that his colon condition was causally connected to his compensable injury and that the treatment he received for it was reasonably necessary. He argues that since no doctor ever stated that his colon condition was not related to his spinal cord injury, and several doctors stated that it was related, the only evidence in the record was that his neurogenic colon condition was related to his fall. Efird's argument fails to acknowledge that he had the burden of proof on this point. Where the Commission denies benefits because the claimant has failed to meet his burden of proof, the substantial-evidence standard of review requires us to affirm if the Commission's decision displays a substantial basis for the denial of relief. *Cole v. Commerce & Indus. Ins. Co.,* 2009 Ark. App. 617, 2009 WL 3153322. A substantial basis exists if fair-minded persons could reach the same conclusion when considering the same facts. *Id.*

Arkansas Code Annotated section 11–9–508(a) (Repl.2012) requires an employer to provide an injured employee such medical services "as may be reasonably necessary in connection with the injury received by the employee." However, the employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary. *Nichols v. Omaha Sch. Dist.,* 2010 Ark.

App. 194, at 5, 374 S.W.3d 148, 150–51. What constitutes reasonable and necessary medical treatment is a question of fact to be determined by the Commission. *Id.*

Here, the Commission determined that the evidence that would tend to support a finding that Efird's bowel problems were causally connected with the compensable injury was not sufficient to satisfy his burden of proof. We hold that the Commission's decision displays a substantial basis for denial of the relief sought by Efird and affirm on this point.

### B. Impairment Rating

Next, Efird contends that the Commission's decision to limit his impairment rating to twelve percent is not supported by substantial evidence because it is based on the erroneous conclusion that his colon condition was unrelated to his compensable injury. He agrees, however, that impairment rating for his cervical decompression at multiple levels would be twelve percent under the AMA Guides. Thus, his only argument—that his impairment rating should be higher because of his colon condition—fails because the Commission's finding that his colon condition is not compensable is supported by substantial evidence.

### C. Permanent and Total Disability

■ Finally, Efird argues that he is no longer able to work and is entitled to permanent and total disability benefits. Permanent total disability "means inability, because of compensable injury or occupational disease, to earn any meaningful wages in the same or other employment." Ark.Code Ann. § 11–9–519(e)(1). The burden of proof is on the employee to prove inability to earn any meaningful wages in the same or other employment. Ark.Code Ann. § 11–9–519(e)(2). When a claimant has been assigned an anatomical impairment rating to the body as a whole, the Commission has the authority to increase the disability rating, and it can find a claimant totally and permanently disabled based upon wage-loss factors. *Lee v. Alcoa Extrusion, Inc.,* 89 Ark.App. 228, 201 S.W.3d 449 (2005).

Here, the Commission noted that Efird had not made any effort to pursue vocation rehabilitation in order to go back to work, and he was still capable of participating in retail shopping and other daily activities. The Commission stated that it considered the proper factors—Efird's age, education, work experience, and demonstrated lack of interest in returning to any suitable employment—in determining that he was entitled to twenty-four percent wage-loss disability benefits. We affirm on this point.

### II. *Cross–Appeal*

■ Cross-appellants argue that this court should reverse the Commission's award of wage-loss disability benefits. They point to Efird's many prior medical issues and argue that his work-related fall is not the major cause of his disability. *See* Ark.Code Ann. § 11–9–102(4)(F)(ii) (providing that "(a) Permanent benefits shall be awarded only upon a determination that the compensable injury was the major cause of the disability or impairment; (b) If any compensable injury combines with a preexisting disease or condition or the natural process of aging to cause or prolong disability or a need for treatment, permanent benefits shall be payable for the resultant condition only if the compensable injury is the major cause of the permanent disability or need for treatment.").

■ The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Sivixay v. Danaher Tool Grp.,*

2009 Ark. App. 786, at 5, 359 S.W.3d 433, 435. When a claimant has an impairment rating to the body as a whole, the Commission has the authority to increase the disability rating based upon wage-loss factors. *Id.* The Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other factors affecting wage loss, such as the claimant's age, education, and work experience. *Id.* Motivation, post-injury income, credibility, demeanor, and a multitude of other factors are matters to be considered in claims for wage-loss disability benefits in excess of permanent physical impairment. *Id.*

Here, there was ample evidence that Efird was not capable of performing the work duties he had previously been able to perform. He testified that he was having more trouble walking than he did before the accident and could no longer perform even his limited duties for Whelan. As with Efird's arguments on direct appeal, the Commission weighed the evidence and made a determination that is supported by substantial evidence. Therefore, we must affirm.

Affirmed.

GRUBER and MARTIN, JJ., agree.