Cite as 2021 Ark. App. 83

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CV-20-487

| | | |
|---|---|---|
| HOT SPRINGS CONVENTION CENTER | | OPINION DELIVERED: FEBRUARY 24, 2021 |
| | APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G606805] |
| V. | | |
| TIMOTHY PHELPS | | |
| | APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Judge

The Hot Springs Convention Center (HSCC) appeals the unanimous June 25, 2020 opinion of the Arkansas Workers' Compensation Commission (Commission), which found that Timothy Phelps was entitled to a 10 percent wage-loss disability benefit in excess of his 7 percent impairment rating.[1] The sole argument on appeal is that the Commission's wage-loss disability benefit was not supported by substantial evidence. We affirm.

Phelps began working for the Hot Springs Advertising & Promotion Commission (HSAPC), as a painter in 2007. He held that position for between four and five years before moving to the maintenance department. Phelps's job duties in the maintenance department

---

[1]The Commission affirmed the administrative law judge's (ALJ's) finding that Phelps had failed to prove that he was entitled to permanent total-disability benefits; but that finding is not the subject of this appeal.

involved completing repairs in the building, running the computers to turn on the air handlers and boilers, and opening up and locking the building.

Phelps had worked for the HSCC for approximately nine years when he sustained compensable injuries on September 14, 2016. Phelps was working on bleachers that retract back into the walls of the arena, but three of the seats were stuck and would not properly retract. He attempted to manually release the seats, and when he did, the seats released and threw Phelps backwards, causing him to fall eight to ten feet to the concrete floor. Phelps landed on his left side, injuring his left shoulder, wrist, back, hip, and head.

The HSCC accepted his injuries as compensable and sent Phelps to the CHI St. Vincent emergency room. There, a CT scan revealed a compression fracture at L2 in his lower back. Following that visit, Phelps was sent to Dr. Mark Larey, who referred Phelps to both an orthopedic physician and a neurosurgeon for his back and shoulder.

Dr. Victor Vargas, the orthopedic doctor, ordered an MRI on Phelps's shoulder, which revealed a rotator-cuff tear. Dr. Vargas then referred Phelps to Dr. Michael Hussey for surgery to repair the rotator cuff, which was performed on October 26, 2016. Dr. Hussey ultimately released Phelps to return to work without restrictions and assigned a 0 percent impairment rating to the left shoulder on March 22, 2017. Phelps continues to have limited mobility in his left shoulder, and he cannot perform any lifting work over his head on the left side or any repetitive motion with his left arm. He is unable to lift more than five pounds with his left arm and is unable able to paint because it would require him to lift his arm over his shoulder. Phelps rates his daily shoulder pain as seven on a scale of one to ten.

Dr. Vargas also referred Phelps to Dr. Justin Seale for treatment of his back injury. Dr. Seale confirmed that Phelps had suffered an L2 compression fracture and a moderate to severe disc-space collapse at L5-S1. Phelps treated with Dr. Seale until he reached maximum medical improvement on December 12, 2016. Dr. Seale returned Phelps to work without any restrictions for his back but did assign Phelps a 7 percent impairment rating.

Phelps has had continuous back pain since his fall. He has been unable to do several ordinary job functions including walking up or down stairs, lifting, and other physically demanding duties. Dr. Seale recommended that Phelps have epidural steroid injections, but he has not wanted to lose his physical ability by having surgery or injections. Phelps has endured pain in his back that he rates as ten on a scale of one to ten since the September 14, 2016 incident.

Following his release from Drs. Hussey and Seale, Phelps returned to work with the HSCC without restrictions as a maintenance technician on March 27, 2017. He was able to perform most of his job functions, including work that was done on the computer and duties that did not involve lifting. However, Phelps did require accommodations for the more physical aspects of the job, and whenever lifting was involved, the HSCC had to have another employee perform the task. Phelps continued to work there for more than two months before he was terminated on June 5, 2017 for the listed reason of failure to pass the boiler exam. Phelps had initially taken the boiler exam four years prior and failed, but the HSCC allowed him to continue working. Phelps claims that he was unaware that passing the boiler exam was a condition of continued employment, and it was only after his compensable injuries that his failing exam score became a basis for termination.

3

A hearing was held before the ALJ on August 30, 2019, regarding whether Phelps was permanently and totally disabled or, in the alternative, was owed wage-loss disability benefits. On November 15, the ALJ issued an opinion stating that Phelps was not permanently totally disabled and was not owed wage-loss disability benefits over his impairment rating. Phelps appealed the ALJ's decision to the Full Commission. The Commission, in a unanimous opinion entered on June 25, 2020, agreed with the ALJ's finding that Phelps was not permanently and totally disabled but awarded a wage-loss disability benefit in the amount of 10 percent in excess of his 7 percent impairment rating. The HSCC filed a timely notice of appeal on July 14.

This court views the evidence and all reasonable inferences in the light most favorable to the Commission's findings and affirms if they are supported by substantial evidence. *Craighead Cnty. v. Tipton*, 2020 Ark. App. 416, at 5. Substantial evidence is that which a reasonable mind might find as adequate to support a conclusion. *Id*. The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; rather, it is whether there is substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact. *Id*. Credibility questions and the weight to be given to witness testimony are within the Commission's exclusive province. *Id*. It is also within the Commission's province to weigh all the medical evidence and to determine what is most credible. *Id*. at 6. We have long held that the Commission's decision to accept or reject medical opinions and how it resolves conflicting medical evidence has the force and effect of a jury verdict. *Id*.

The HSCC's sole argument is that substantial evidence does not support the Commission's finding that Phelps was entitled to a 10 percent wage-loss disability benefit over his 7 percent body-to-the-whole impairment rating. Pursuant to Arkansas Code Annotated section 11-9-522(b)(1) (Repl. 2012), when a claimant has an impairment rating to the body as a whole, the Commission has the authority to increase the disability rating on the basis of wage-loss factors. *Tempworks Mgmt. Servs., Inc. v. Jaynes*, 2020 Ark. App. 70, at 5, 593 S.W.3d 519, 523. The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Id.* at 6, 593 S.W.3d at 523. The Commission must determine disability after a consideration of medical evidence and other factors affecting wage loss, such as the claimant's age, education, and work experience. *Id.*, 593 S.W.3d at 523. Motivation, postinjury income, credibility, demeanor, and a multitude of other factors are matters to be considered in claims for wage-loss disability benefits in excess of permanent-physical impairment. *Id.*

In this instant case, the Commission considered Phelps's advanced age, his limited education, and his prior work history of physically demanding employment and related skills. It also considered Phelps's inability to perform the same types of work he had done in the past because of physical limitations related to his back injury in arriving at its determination that his future earning capacity has been affected by his compensable injuries. In its decision, the Commission cited *Milton v. K-Tops Plastic Mfg. Co.*, 2012 Ark. App. 175, 392 S.W.3d 364, and subsequently concluded that Phelps was entitled to 10 percent wage-loss disability benefits. The Commission's findings are based on the appropriate wage-loss factors, and its opinion adequately discusses the rationale that underlies that finding.

5

The HSCC is requesting that we reweigh the evidence and credibility findings made by the Commission; however, we will not do so as it is the Commission's duty to make credibility determinations and to weigh the evidence. Considering the fact-intensive nature of this inquiry in which the specific facts of this claimant's age, abilities, education, and physical limitations, motivation, demeanor, and any other factors deemed relevant are to be considered, we hold that reasonable minds could conclude that Phelps was entitled to 10 percent wage-loss disability benefits. Because the Commission's decision is supported by substantial evidence, we affirm.

Affirmed.

VAUGHT and HIXSON, JJ., agree.

*Mary Edwards*, for appellant.

*Rainwater, Holt & Sexton, P.A.*, by: *Kolton Jones*, for appellee.